KLEINSCHMIDT et al., respondents, v. DUNPHY, appellant.

PAROL EVIDENCE OF WRITING NOT IN EXISTENCE.  Parol evidence of a writing,
the existence of which is denied by one of the parties to the action, is ad-
missible, if the court is satisfied that the facts constituting a foundation
therefor have been proved.

DECLARATIONS OF ONE PARTY MADE IN ABSENCE OF ANOTHER.  The declara-
tions of parties concerning a mortgage executed by them to one of the
defendants, and made in the absence of this defendant, are admissible, if
evidence has been introduced tending to show collusion between the parties
respecting the instrument.

DISTRICT COURTS—not federal courts.  The district courts of this Territory,
created by congress, are not federal courts contemplated by the constitu-
tion.

STATUTE AUTHORIZING VERDICT BY THREE-FOURTHS OF JURY VOID.  The act
of the legislature of Montana which provides that the verdict of three-
fourths of the jurors shall have the same effect "as if agreed upon by the
whole of the jurors," approved January 15, 1869, is unconstitutional and
void in actions at common law, in which the value at controversy exceeds $20.

TRIAL BY JURY.  A trial by jury is a trial by a tribunal of twelve men, acting
only with unanimity.

JURY TRIALS IN EQUITY CAUSES.  The constitution does not secure the right of
trial by jury in causes of equity jurisdiction, and the legislature of this
Territory possesses the power to determine the number of jurors that can
render a verdict in the trial of issues of fact arising in such causes.

*Appeal from the Third District, Lewis and Clarke County.*

IN April, 1868, Kleinschmidt commenced this action in
behalf of himself and other judgment creditors of B. Morse,
surviving partner of the late firm of E. & B. Morse, against
said B. Morse and Dunphy, in the district court in Gallatin
county.  The complaint alleged that Kleinschmidt recov-
ered a judgment against said Morse, as said partner, on
March 12, 1868, for $16,957.50; that an execution was issued
upon said judgment, and returned by the sheriff on April
2, 1868, wholly unsatisfied; that said judgment had not
been paid; that said E. & B. Morse, on October 31, 1867,
executed to Dunphy a mortgage upon their real and per-
sonal property, to secure the payment of $30,000; that the
property was worth $70,000; that the Morses, at the time
the mortgage was executed, were indebted to their creditors
in the sum of $39,000; that the mortgage was made with
the intent to hinder, delay and defraud their creditors by

the Morses, who continued in the possession of the property several months after the execution of the mortgage; that the indebtedness described in the mortgage was fictitious, and that the Morses and Dunphy had so stated to divers persons; that the Morses, in October, 1867, owed Dunphy about $6,000, which was to be paid in Helena in flour, under an agreement of the parties; that Dunphy, by means of this mortgage and fictitious indebtedness, had prevented plaintiff, and other judgment creditors of the Morses, from collecting their demands; that Dunphy had forbidden the sheriff to levy upon said property, and the sheriff had returned unsatisfied the executions of creditors of the Morses to the amount of $35,000; that B. Morse, in conjunction with Dunphy, was disposing of the mortgaged property, and had realized over $30,000; that B. Morse and the firm of E. & B. Morse, and Dunphy, had nothing, except this property; and that plaintiff's judgment would remain unpaid if this mortgaged property was not applied to its payment.

The complaint prayed that the mortgage be adjudged fraudulent; that a receiver be appointed; that defendants be enjoined from disposing of the mortgaged property, and that plaintiff have judgment against Dunphy for the remainder due upon his judgment against the Morses.

On June 8, 1868, an amended complaint was filed, which contained the following additional allegations:    That B. Morse, partner as aforesaid, on January 3, 1868, executed an assignment to Dunphy of the mortgaged property, and authorized him to dispose thereof, and that this assignment was fraudulent.

On June 22, 1868, Dunphy answered, and denied that the judgment in favor of Kleinschmidt, and against the Morses, was legally obtained.   He alleged that the Morses made the mortgage on October 31, 1867, in good faith, to secure their indebtedness to him; that this indebtedness, with interest, was $30,000, and that he had received on account of the mortgage about $16,000.   The material allegations of the complaint were denied.

The answer of B. Morse, which was substantially the same as that of Dunphy, was filed on June 22, 1868. The replication denying the new matter, set forth in the answers of Morse and Dunphy, was filed on the same day.

On June 23, 1868, C. E. Duer was made a party plaintiff upon his petition, which set forth that he was a judgment creditor of B. Morse, as surviving partner, in the sum of $15,410.05. The complaint contained the same allegations as that of Kleinschmidt, and admitted a payment on the judgment of $250.98. Dunphy's answer to this complaint, and Duer's reply to the same, stated no new matter.

The appearance of B. Morse was withdrawn on June 27, 1868. The parties changed the place of trial to Lewis and Clarke county by agreement, and the case was tried by a jury in March, 1869.

During the trial Kleinschmidt testified as follows : "I had a conversation with Elkanah Morse, one of the firm of E. & B. Morse, in latter part of October, 1867 ; Elk. Morse showed me an agreement between E. M. Dunphy and E. & B. Morse, in which Dunphy agreed to cancel a certain mortgage made by him, whenever E. & B. Morse wanted Dunphy to do so ; the paper was signed E. M. Dunphy ; I recognized the handwriting as Dunphy's ; I think the amount of the mortgage was stated, but don't recollect ; I think the body of the instrument was in the handwriting of Elkanah Morse."

Dunphy denied that any such agreement was ever executed, and excepted to the ruling of the court, KNOWLES, J., in allowing the testimony to be introduced.

Kleinschmidt also testified that E. Morse told him he had executed a mortgage on all his property to Dunphy ; that he did not intend that Hamilton and Herron should make any thing out of him, but the mortgage was not intended to affect his other creditors ; that the agreement he showed him would protect him against Dunphy ; that he had purchased $6,000 or $7,000 worth of goods from Dunphy, which he was to pay in flour ; that he would keep the mortgage and agreement in his possession and be safe ; that his

property was worth $45,000; that all of his indebtedness would be paid; and that the suit of Hamilton and Herron would probably go against him, and he would not put the mortgage on record unless in case of emergency.

Dunphy objected to the introduction of these declarations of E. Morse, made in the foregoing conversation in his absence. The objection was overruled, and defendant excepted.

Other witnesses testified regarding the declarations of E. Morse or B. Morse, concerning the mortgage in controversy, its amount, the manner of its payment, and the amount of the indebtedness due from the Morses to Dunphy on account of the mortgage, all of which were made in the absence of Dunphy. The defendant objected to the introduction of this testimony, and excepted to the ruling of the court in admitting it.

The court submitted to the jury twenty-one issues of fact, and instructed them that three-fourths of their number could find a verdict. The jury returned the findings upon these issues, in most of which nine jurors concurred and three dissented. The defendant objected to the entry of the verdict, because it was found by nine jurors. This objection was overruled, and defendant excepted.

On April 2, 1869, the court, KNOWLES, J., signed a decree in favor of plaintiff for $35,737, and $7,149 costs, in accordance with the findings. The motion of defendant for a new trial was denied, and defendant appealed.

Elkanah Morse, of the firm of E. & B. Morse, died on December 4, 1867. The judgment in favor of Kleinschmidt against Morse, which is referred to in the pleadings, was the subject of an appeal to this court in December, 1868; *ante*, p. 100.

CHUMASERO & CHADWICK, SHOBER & LOWRY, WORD & SPRATT and W. F. SANDERS, for appellant.

No lawful verdict was found by the jury, as twelve jurors did not agree in finding it. U. S. Const., Amend. 5 and 7; Organic Act, § 6; 1 Story's Eq., §§ 60, 72, 76; 3 Bl. Com. 431;

432; Sedgw. Stat. and Const. Law, 545, 546; 10 Bacon's Abr. 306, 315; 9 id. 564; 2 Bouv. Law Dict. 622; id. 113, 584; 3 Greenl. Ev., §§ 260, 264; 2 Sto. Const., § 1763; *Smith v. Pollock*, 2 Cal. 94; Whit. N. Y. Prac. 391; 2 Lead. Cr. Cas. 327; *Kruger* v. *Hudson R. R. R. Co.*, 12 N. Y. Ap. 198.

Oral evidence cannot be substituted for any written instrument, the existence of which is in dispute, and the production of which is material to the issues between the parties or the credit of the witnesses. 1 Greenl. Ev., § 88; 1 Phil. Ev., § 475; 2 Phil. Ev., § 422.

The respondent was enabled, by this improper testimony, to establish a false foundation for introducing evidence of the declarations of E. & B. Morse. There was no evidence that Dunphy or B. Morse ever had this instrument. Dunphy was the only party defending this suit, and the statutory rule, to produce papers, does not apply. Acts 1867, 220, § 422. Dunphy and B. Morse swear that no such instrument was ever executed. There was no evidence that Dunphy ever had any control over said instrument. How could Dunphy produce an instrument which he did not possess or control, and the existence of which he had denied under oath?

DAVIS & THOROUGHMAN and WOOLFOLK & TOOLE, for respondent.

Kleinschmidt could testify as to the contents of the writing executed by Dunphy to E. & B. Morse, after notice to produce the original had been served, and after B. Morse had been interrogated concerning its execution. Every means to obtain the original had been exhausted, and parol evidence of its contents was proper. 1 Greenl. Ev., §§ 82 to 91; Prac. Act 1867, §§ 380, 421, 422; *Gordon* v. *Searing*, 8 Cal. 49; *Hayden* v. *Palmer*, 2 Hill, 205.

The declarations of the Morses were not proved until evidence had been introduced showing collusion between them and Dunphy to defraud creditors, and that the Morses remained in the possession of the mortgaged property and exercised acts of ownership over it, after they claimed to

have delivered it to Dunphy. The question as to the foundation for the admission of this evidence was for the discretion of the chancellor below. In this case that discretion was properly exercised. 2 Phil. Ev. 177, 602; *Adams* v. *Davidson*, 6 Seld. 309; *Landecker* v. *Houghtaling*, 7 Cal. 392; *Ellis* v. *Janes*, 10 id. 456; *Visher* v. *Webster*, 8 id. 113; *Swartz* v. *Hazlett*, id. 128; *Seligman* v. *Kalkman*, id. 213.

The verdict of nine jurors was lawful. Acts 1869, 66, § 15.

Appellant took no valid exception to the charge of the court, directing that nine jurors should return a verdict. Exceptions to the whole charge, without pointing out 'the specific part excepted to, will not be regarded by this court if any portion of the charge is correct. Acts 1867, §§ 188, 189; *Hicks* v. *Coleman*, 25 Cal. 146; *More* v. *Del Valle*, 28 id. 174; *Jones* v. *Osgood*, 2 Seld. 234; *Hunt* v. *Maybee*, 3 id. 266.

All the authorities are clear that a jury trial may be waived. Appellants had no right to gamble for a verdict, and then object to receiving it, after it had been given.

The sixth and seventh amendments to the constitution, relating to trial by jury, do not affect State or territorial courts. Organic Act, §§ 6, 13; 2 Sto. Const. 575 to 579; *Ex parte Smith*, 10 Wend. 449; *Murphy* v. *People*, 2 Cow. 815; *Livingston* v. *Mayor*, 8 Wend. 102; Sedgw. Stat. and Const. Law, 543; *Am. Ins. Co.* v. *Carter*, 1 Pet. 546.

This is a bill in equity. Equity causes are not embraced in the provisions of the constitution, relative to trial by jury. It is expressly limited to "suits at common law," where the amount in controversy exceeds $20. 2 Sto. Const. 577 to 583; *Rathbun* v. *Rathbun*, 3 How. Pr. 139; *Lee* v. *Tillotson*, 24 Wend. 337; *Cahoon* v. *Levy*, 5 Cal. 294.

Equity will render judgment against a fraudulent vendee in favor of a creditor, when the fraudulent vendee has converted the property and thereby defeated the creditor's claim. Equity, having obtained jurisdiction for discovery, will retain it for relief. *Swinford* v. *Rogers*, 23 Cal. 233;

*Goodwin* v. *Hammond,* 13 Cal. 168 ; Edw. Receivers, 415 ; *King* v. *Baldwin,* 17 Johns. 384.

WARREN, C. J.   This was an action brought by respondents, as judgment creditors of the partnership firm of E. & B. Morse, to set aside a mortgage executed by said firm to defendant Dunphy, as fraudulent, and to subject the property conveyed thereby, in the hands of Dunphy, to payment of their respective judgments.

The cause was tried at the March term, 1869, of the district court, in and for Lewis and Clarke county, before KNOWLES, J., and a jury.   The court submitted to the jury certain issues or questions of fact, and directed written findings thereon.

The jury returned their written findings upon the questions of fact, signed by their foreman, and by three of the jurors as dissenting therefrom.   The appellants filed objections to entry of the findings of the jury, which was overruled, and the findings were entered and approved by the court ; and, on the same day, appellant Dunphy filed notice of a motion for a new trial, on the grounds of insufficiency of the evidence ; of errors in law occurring at the trial ; of newly-discovered evidence, and of error in the entry of the findings of nine of the jurors, and filed affidavits in support of his motion.   On April 2, 1869, the court entered a decree in accordance with the facts found by the jury, and, afterward, on hearing of the motion for a new trial, overruled the same.

Defendant Dunphy appeals from the decree and from the order overruling the motion for a new trial, and assigns several causes of error.

So far as the order overruling the motion for a new trial is concerned, it is only necessary to say, that where evidence is conflicting, the jury are to determine the facts, and their verdict will not be disturbed, unless clearly unsupported by evidence before them ; no error in law occurring at the trial is specified, other than will be considered in discussing errors assigned in statement on the appeal, and the affidavits

filed, disclosing newly-discovered evidence, show that evidence to have been of a cumulative character ; and, hence, we hold the court below did not err in overruling the motion.

The statement on appeal. assigns nine specifications of error, but, on the hearing in this court, appellant, in his brief and argument, relies upon but three, which we will consider in order.

The first error assigned is in permitting parol evidence to be given of a writing alleged to have been executed by defendant Dunphy, the existence of which was controverted by appellants.

The question of the existence of facts constituting a foundation for the admission of secondary evidence, was one for the determination of the court under the rules of evidence, and, while the evidence was conflicting, the record seems to sustain the action of the court in permitting parol evidence of the contents of the paper to go to the jury.

The second error assigned is in admission. of the declarations of defendants below, E. Morse and B. Morse, respect, ively, concerning the conveyance executed by them to defendant Dunphy, made in the absence of Dunphy.

The record shows that, before these statements of the Morses were admitted, evidence had been introduced tending to show complicity and collusion between Dunphy and the Morses, in respect to the conveyance in question, which was sufficient to make competent the admissions of one as against the others.

The next error assigned is in allowing the findings of but three-fourths of the jury, three dissenting therefrom, to be received and entered, and in entering the decree upon such findings.

By stipulation, the following causes, to wit: *Bray* v. *Batchelder, Snyder* v. *Tiernan,* and *Siegel et al.* v. *Jones & Lott,* are submitted, subject to the determination of this question, which is one of a most interesting and important character.

The act of the legislative assembly of the Territory, approved December 23, 1867, known as the civil practice act, enacts that "there shall be in this Territory but one form

of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs" (section 1), and that "an issue of fact shall be tried by a jury, unless a jury trial is waived or a reference be ordered, as provided in this act." (See section 155.)

Section 15 of the act approved January 15, 1869, provides that "in all civil cases, if three-fourths of the jurors agree upon a verdict, it shall stand and have the same force and effect as if agreed upon by the whole of the jurors."

It is claimed, in all the cases under consideration in which the question is involved, that the last-mentioned act is in contravention of article VII of the amendments to the constitution of the United States, and, therefore, void.

We will first consider the question generally, and then apply the principle involved to the several cases submitted.

The article of the constitution in question reads that "in suits at common law, where the value at controversy shall exceed $20, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined by any court of the United States than according to the rules of the common law."

We are led in the first instance to consider the nature and extent of this restriction. We believe it is admitted, and, at all events, it is too well settled to admit of question, that this article belongs to that class of limitations upon the exercise of power which were imposed by the constitution upon the federal government, and which have no application to the State governments in the exercise of these powers which were "reserved to the States respectively, or to the people."

The restriction is general, and applies to all the departments of the general government alike, especially to the legislative and judicial branches, to whom are assigned the functions of enacting and of construing the laws, so that neither can the congress by law, nor the national courts by their rules or in their practice, deny to a citizen the right thereby secured.

The several States, by their constitutions, may otherwise

provide, although the principle is one of such ancient origin, and held by ourselves in common with the nation, from whom our jurisprudence is mainly derived, in such high estimation that, with but few exceptions, it is incorporated in the constitutions of the different States of the Union in its original form, and in many of them has been extended beyond the terms of the federal constitution and applied to trials of causes in equity, as well as at common law, and regardless of the amount in controversy.

In its application to the federal government the right of trial by jury in civil cases has been held to apply only to the class of causes specified in this article, that is, causes at *common law*, as distinguished from causes of *equity* and of *admiralty* jurisdiction, and this construction is well settled by the courts.

It remains then to determine how far this provision affects the powers of our territorial governments, and to this end we must consider its source, nature and extent. The condition of a Territory of the United States is somewhat anomalous. The extent of the powers of its local government and the rights of its inhabitants have furnished occasion not only for profound legal argument, but for great political dissension. The power of congress to legislate upon the local or domestic affairs of the people inhabiting a Territory has been strenuously denied, but at this time seems to be authoritatively established. Whether this power be derived, as claimed by some, from the constitutional right to make " all needful rules and regulations respecting the Territory or other property belonging to the United States," or be necessarily deducible, as contended by others, from the power to acquire and hold territory, it is unnecessary now to inquire.

In the exercise of this general power congress passed the act establishing and creating a temporary government for this Territory. This act distributes the powers of the local government among three departments, and ordains that the legislative power "shall extend to all rightful subjects of legislation consistent with the constitution of the United

States and the provisions of this act;" and provides that the judicial power shall be vested in certain courts, the jurisdiction of which shall be limited by law, provided that the supreme and district courts respectively shall possess chancery as well as common-law jurisdiction.

The act also provides that "the constitution and all the laws of the United States which are not locally inapplicable shall have the same force and effect within the Territory as elsewhere within the United States," and clothes the district courts created by it with the same jurisdiction in all cases arising under the constitution and laws of the United States, as is vested by law in the district and circuit courts of the United States.

Can the legislature or the courts thus established by law or in their practice deny the right of trial by jury in suits at common law in which the value at controversy exceeds twenty dollars?

The argument of the respondent in this case has been that, while the territorial district courts, in addition to their local jurisdiction under the territorial laws and their chancery and common-law powers, are also vested with federal jurisdiction, they yet are not national or federal courts, as established and contemplated by the constitution, and hence that the constitutional restriction we are considering does not apply to trials of causes in such courts.

On the other hand, it is urged by the appellant that the organic act performs the functions of a State constitution, and that under its express terms all the general provisions of the federal constitution apply to the territorial government.

It is certainly true that the territorial district courts are not federal courts, as contemplated by the constitution. They are created by congressional enactment in the exercise of the power to govern territory of the United States, and must necessarily be restricted in their powers and jurisdiction to the limit of the power which created them. What that limit is we will consider hereafter.

It will be, perhaps, a digression to discuss the nature and

extent of the powers vested in the district courts by the organic act, but, as a subject which has attracted general interest and germane to the question before us, we will briefly refer to it.

The district court sits in two distinct capacities, as a local tribunal, and also exercising the jurisdiction of a federal court.

As a local tribunal, its practice and course of procedure, provided its common law and chancery jurisdiction be not impaired, may be regulated by the local laws, which, however, must not infringe any principle of the constitution or any act of congress applicable to it, and we take occasion, although the question is not raised in the record of any of the causes now under consideration, to suggest to the legislative assembly, as well as to the legal profession of the Territory, whether the civil practice act now in force, or the construction heretofore placed upon it, in so far as it permits legal and equitable claims or defenses to be united, be not erroneous. The supreme court of the United States, in *Thompson* v. *Railroad Companies,* 6 Wall. Rep., hold that "the constitution of the United States and the acts of congress recognize and establish the distinction between law and equity. The remedies in the courts of the United States are, at common law and in equity, as distinguished and defined in that country from which we derive our knowledge of these principles." "And, although the forms of proceedings and practice in the State courts shall have been adopted in the circuit courts of the United States, yet, the adoption of the State practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit."

If it be true, as held, that the constitution and the acts of congress recognize and establish the distinction between law and equity, can the legislative assembly of the Territory, under the organic act, abolish that distinction in the territorial district courts, even while sitting as local tribunals? As federal courts, the district courts are understood to be governed, in all cases *at common law,* by the local

VOL. I — 17.

rules of decision and of practice, where the constitution or statutes of the United States do not otherwise provide ; while in *causes in equity* the proceedings must conform to the rules governing causes in equity, notwithstanding the legislative assembly have, by statute, abolished the distinction between forms of proceeding at law and in equity, and have established but one form and course of proceeding in all civil actions.   But to return :

The right of jury trial, secured by the article of the constitution under consideration, referring not only to trials in the national courts established by the constitution, and the territorial district courts, at least while in the exercise merely of their local jurisdiction, not being embraced under its provisions, it is urged that the court below did not err in receiving the findings and rendering the decree in the principal cause now under consideration.   This proposition assumes that the cause is one at common law, and for the present we will so assume.   This position could only be maintained by holding that, while the constitutional restriction applied to the federal judiciary, it did not extend to the legislative power intended to be restricted.   We have already stated that it was designed to restrict all the departments of the federal government, legislative as well as judicial.   If, then, it is restrictive upon congress as well as upon the federal courts, can congress, in the exercise of its power to govern a Territory, create a local legislature or local courts, and delegate to either a power which it does not itself possess, to deny the right in question ?   We think clearly it cannot.

Even without the provision in the organic act, that the constitution and laws not locally inapplicable shall have the same force and effect in the Territory as elsewhere within the United States, the conclusion would be the same.

Congress has no power, either directly or by a delegation of power to another body of its own creation, to deny to a citizen of a territory the right to a trial by jury in a suit at common law, where the value at controversy exceeds $20.

It is further contended, however, that inasmuch as the act

of the legislative assembly requires the same number of jurors as the common law, it is not an infraction of the constitution.

This position is not tenable.

"Trial by jury," as the words are used in the constitution, had, at the time of its adoption, a fixed legal signification, and from time immemorial has meant a trial by a tribunal of twelve men, acting only upon a unanimous determination. The origin of this mode of trial is lost in the dimness of the past, but from the earliest period down to the time of the adoption of the constitution, unanimity of twelve jurors alone has constituted a legal verdict. If the legislative assembly could dispense with one attribute or essential of a verdict, it could as well destroy the other, or repeal the right altogether. It can do neither; and, hence, the act in question is, in so far as it applies to actions at common law in which the value at controversy exceeds $20, unconstitutional and void.

The causes before mentioned of *Bray* v. *Batchelder, Snyder* v. *Tiernan*, and *Siegel et al.* v. *Jones & Lott*, are all common law causes, and embraced within the foregoing principle, and the judgments in them must be reversed, and the causes remanded for new trial.

The cause at bar (*Kleinschmidt* v. *Dunphy et al.*), however, is clearly one of chancery jurisdiction, and it remains now to consider the statute in reference to trials of causes in equity.

The right of jury trial is not secured by the constitution in causes of equity jurisdiction, and in the absence of statutory enactment, federal or territorial, it does not exist. In such cases the chancellor might, according to the established rules of chancery practice, call a jury to his aid, to determine questions of fact arising upon the hearing. Such verdict, however, would be merely advisory, and addressed solely to the conscience of the chancellor, who might wholly disregard it.

We have seen that the civil practice act has provided the same manner of disposing of issues of fact in all civil cases,

whether in law or in equity. It follows, from what we have said, that the legislative assembly has the same power as congress, within the limitations of the grant of power to it contained in the acts of congress and the constitution.

Could congress confer the right of trial by jury of issues of fact in causes in equity in the federal courts? and could congress by law dispense, in such causes, with the requisites of a common-law jury, either in respect to number or unanimity?

We think it could. We find nothing in the constitution preventing the exercise of such power. Hence, we conclude that the legislative assembly also possesses the power, under the organic act, as being a subject of rightful legislation, and contravening no provision of the constitution or of the acts of congress. This power they have exercised, and it is the province of the judiciary to construe, and not to make laws, and, in construing, to give effect to them so far as it may be done. We conclude, then, that the act in question, so far as it relates to trial of issues of fact in causes in equity, is constitutional and valid.

The other errors assigned in the statement on appeal in this case were not urged in the briefs or arguments in this court, and we will only notice the refusal of the court to give the instructions asked by both parties.

The court submitted to the jury only specific questions of fact, and gave all the instructions necessary in regard to the questions submitted, as no general verdict was required.

On examination of the whole record we find no error sufficient to warrant a new trial.

The decree of the court below is affirmed, with costs.

KNOWLES, J., and SYMES, J., concurred.

*Exceptions overruled.*

This cause was taken by appeal to the supreme court of the United States, and the decree of the district court was reversed. 11 Wall. 610.