## PEOPLE v. MASTERSON.

(Supreme Court, Appellate Division, First Department. June 17, 1904.)

1. ABDUCTION—NEW TRIAL—EVIDENCE.

A new trial in a prosecution under Pen. Code, § 282 (1), for abducting a female under 18 years of age for the purpose of intercourse, should be granted, under Code Cr. Proc. § 527, authorizing the setting aside of a verdict when it appears that justice requires a new trial, the testimony being that of the girl who for a long time had been abandoned, vicious,

and criminal, and she being actuated by revenge for defendant's arrest of her for theft, and that of the abandoned woman to whose place she went, who stated that she testified against defendant to protect herself, and defendant's testimony being that he supposed the girl would go to the place as a domestic servant.

Hatch and O'Brien, JJ., dissenting.

Appeal from Court of General Sessions, New York County.

Eugene A. Masterson was convicted of abduction, and appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

J. F. McIntyre, for appellant.

R. C. Taylor, for the People.

PATTERSON, J. A careful examination of the record presented on this appeal convinces us that it is our duty to direct a new trial of this defendant under the ample power given to this court to set aside a verdict against "a prisoner" when it appears that justice requires a new trial. Section 527, Code Cr. Proc.; People v. Boas, 92 N. Y. 560. This defendant was convicted of the crime of abduction. The offense charged against him is defined in subdivision 1 of section 282 of the Penal Code. By that subdivision the crime is committed by a person who "takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed or harbored or used, a female under the age of eighteen years, for the purpose of prostitution; or, not being her husband, for the purpose of sexual intercourse; or without the consent of her father, mother, guardian or other person having legal charge of her person, for the purpose of marriage." It is charged in the indictment as a first count that the appellant, at the borough of Manhattan, in the city of New York, on the 16th of August, in the year 1902; "did feloniously take, receive, harbor, employ, and use, and cause and procure to be taken, received, harbored, employed, and used, one Anna Berkley, who was then and there a female under the age of eighteen years, to wit, of the age of sixteen years, for the purpose of sexual intercourse, he, the said Eugene A. Masterson, not being then and there the husband of the said Anna Berkley, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity." There is another count in the indictment, but it was not pressed at the trial. There was a sharp conflict of evidence on the trial as to the age of Anna Berkley, the alleged abducted female. We will assume, however, for the purposes of this appeal, that she was under the age of 18 years, but it appears that she was at the time of the alleged abduction, and long previously had been, an abandoned, vicious, and criminal girl. The story of her life, as it appears in this record, reveals a depravity almost incomprehensible in one so young as she is alleged to have been. It was upon her testimony principally, and that of another abandoned woman, the keeper of a bawdy house, that this defendant was convicted. This profligate girl was a complainant. She made a charge against this defendant. She is a self-confessed perjurer,

as well as a thief and a prostitute.   Her story, as told on the trial, is that she became acquainted with the defendant on the street, while he was walking his post as a policeman, and that she was introduced to him by her sister; that at various times he and she would walk and chat together; that they met on the street in August, 1902, and the complainant's sister asked the defendant if he knew of a place to which the complainant could go, and he said yes, he knew of a woman on the west side.   He did not give the woman's name or place of abode, but said it was on the west side.   He subsequently met the girl, and said he had seen the woman, and that he and the woman had called at her sister's house looking for her; and he gave her a paper, wrote an address on it, and told her to go to that address.   She says that paper was destroyed.   She went to that woman, and lived there as a prostitute for several months.   She says she did not know at the time what kind of a place it was.   She swears positively that the defendant did not tell her anything about this woman, only that she was living alone, and that he told her "she should behave herself, and be a good girl."   The woman referred to was a Mrs. Arnold, who kept an apartment, which was evidently used for immoral purposes.   It was sought to corroborate the girl's story by the testimony of this Mrs. Arnold, who received the girl into her apartment to pursue the life of a prostitute.   She was harboring this girl, and was herself guilty of the crime of abduction.   Her testimony is that, before she became acquainted with the girl, she met the defendant at Coney Island.   She had known him previously, but had not seen him for some years.   He asked her generally what she was doing, and she said she was "running a flat" on the west side in New York, and asked if the defendant knew of "any girl for that purpose."   He said he did, and she gave him her address, and subsequently (without going further into detail) the girl went there, and after she had been there some little time the defendant undoubtedly visited her and had intercourse with her.   But the charge against this defendant is that of abduction.   The substance of the charge, and the essence of the offense as charged in the indictment, consists in acts of the defendant in procuring the complainant to take up her abode in this house of prostitution.   The great mass of evidence in the case is directed to the establishment of the fact that it was through his procurement and by his agency that she went to this infamous place for the purpose of prostitution.   We have nothing in the record to establish his acts except the testimony of the girl and this woman Arnold (who is no more worthy of belief than the girl herself) and unimportant statements of another woman.   On cross-examination Mrs. Arnold testified that she was taken to the district attorney's office, and was told that, if she did not make a charge against the defendant, she would be sent to the State Prison, and that it was under these circumstances that she made the charge; and she said, "I am protecting myself now, as I consider, in making this charge against Masterson."   Then she made an affidavit.   But, further than this, an extraordinary circumstance is disclosed in the record concerning the relations of these two women.   While the alleged abducted girl was living in the apartment of Mrs. Arnold, she stole from the latter,

whereupon Mrs. Arnold preferred a charge against her of grand larceny, and this defendant assisted in making the arrest of the accused. The efforts of the defendant to arrest the girl are testified to by Officer Buckley. There does not seem to be much room for doubt that this charge was made by the girl in revenge for the activity of the defendant in his efforts to arrest her on the charge of grand larceny. Bearing in mind that the substance of the offense here charged is not an act of the defendant done some time after the Berkley girl went to the Arnold apartment, but his alleged agency in causing her to go there for immoral purposes, we find the testimony of these two females without corroboration, unless it may be such as has been given by the defendant himself. His testimony is that he did suggest to the girl to go to the apartment, but that it was his belief that she would go there as a domestic servant, and that when he was asked by Mrs. Arnold concerning a girl he said to her that he would get her a servant.

Considering the character of the witnesses for the prosecution, and the interest the two women had in securing the conviction of the defendant that they themselves might escape punishment, or be treated with leniency, and the statements of Masterson, a grave doubt exists as to whether this defendant was really guilty of the particular crime for which he was indicted. But the peculiarities of this case are not exhausted yet. It was given to the jury at half past 2 o'clock in the afternoon. They returned at five minutes past 6 o'clock to hear some testimony read, namely, that given on the direct examination of the defendant. The jury then retired, and remained out all night. On the next morning, at the opening of the court, the justice presiding, of his own motion, called the jury in, and stated to them that he regretted the necessity of keeping them together so long. He then asked if there was any information that the court could give—any further instructions that would aid them in their deliberations and assist them in coming to a conclusion in the case. The foreman said that it was utterly impossible for them to agree, remarking, "We have tried every which way possible, and find that we cannot agree." Thereupon the court asked if there was no way of reconciling their differences, to which the foreman responded that there was not; that they were so far apart that they could not agree; that they had tried their best, and it was impossible. They said it was not a difference as to testimony; that they did not care to have any further testimony read; that it was not about testimony—indicating that they understood perfectly what the testimony was. The foreman said that they did not care for any further instructions, whereupon the court said: "You may retire a little longer. We will keep you together a little while longer." Whereupon, at the request of a juror, the court charged over again as to the subject of abduction. Some further conversation took place, and proper instructions of a general character were repeated, and the jury retired. Returning at 15 minutes after 11 o'clock, they rendered a verdict of guilty as charged in the indictment, with a strong recommendation to the mercy of the court. We do not mean to criticise the action of the court in recalling the jury, but that circumstance is referred to only in connection with

the peculiar verdict which was rendered. We cannot, however, avoid the conclusion that this extraordinary verdict was not the expression of a real belief on the part of each of the jurors that this defendant was guilty of abduction. On the contrary, we are inclined to the belief that it was a mere matter of compromise, made by fatigued and exhausted men. If they really believed, on the evidence, that this defendant was guilty, their strong recommendation to mercy is something worse than an absurdity. If they believed the story of the witnesses for the prosecution, they must have known that the defendant ought to suffer condign punishment, for he was a policeman; and, if he may not be called a guardian of the public morals, it was at least his duty to prevent crime, if in his power to do so; and to become a criminal, and associate himself in one of the most offensive of all crimes—the abduction of females, whether of good or of bad character—would put him entirely outside the pale of consideration, and stamp him as a person unworthy of the least sympathy. On the whole case, without going further into its nauseous details, we conclude that justice requires there should be a new trial.

The judgment of conviction must be reversed, and a new trial ordered.

McLAUGHLIN, J., concurs.

LAUGHLIN, J. I concur, except that I do not agree that the court abused discretion with reference to keeping the jury out on instructions.

HATCH, J. (dissenting). I should be quite willing to agree with the prevailing opinion in this case did the conviction of the defendant rest upon the testimony of Anna Berkley and Mrs. Arnold. Indeed, I should be quite willing to go farther, and hold that the testimony, aside from that given by the defendant, would be insufficient to justify his conviction of the offense charged; but, as I read the testimony of the defendant, he, for all practical purposes, proved the offense charged in the indictment. He admits that he consulted with Mrs. Arnold about procuring for her a girl. He admits that he knew at that time that Mrs. Arnold had been living with at least two men at different times, to whom she had not been married. He admits that he saw the girl, spoke to her about going to Mrs. Arnold's, and gave her the number of the house. He thereafter visited her at this place, the character of which did not admit of deceiving an intelligent person, much less a police officer familiar with such subjects. Upon the main essential features of the case, therefore, he is the strongest corroborating witness of the two women, and his defense came to rest upon his bare denial that he did not know the character of the place kept by Mrs. Arnold, and that he procured the girl to go to this place in the capacity of a servant, and not for any immoral purpose. The heinous character of this offense is aggravated by the fact that the defendant was a police officer, charged with the obligation of upholding the law at all the points where it touched human society. The jury, upon the defendant's own testimony, coupled with the other evi-

dence in the case, was therefore clearly justified, upon the evidence, in finding the defendant guilty, and such result is not at all affected by the fact that the girl was low and abandoned, and Mrs. Arnold depraved. This constituted no defense for the defendant. I am therefore of opinion that the judgment of conviction should be affirmed.

O'BRIEN, J., concurs.