STATE, RESPONDENT, v. CURTISS, APPELLANT.

(No. 8339.)

(Submitted January 8, 1943. Decided February 16, 1943.)

[135 Pac. (2d) 361.]

*Mr. Leo J. Kottas,* for Appellant, submitted a brief, and argued the cause orally.

236

238

Mr. R. V. Bottomly, Attorney General, Mr. Fred Lay, Assistant Attorney General, and Mr. J. Miller Smith, County Attorney of Lewis and Clark County, for Respondent, submitted a brief; Mr. Lay argued the cause orally.

240

MR. JUSTICE ERICKSON delivered the opinion of the court.

Defendant was convicted of the crime of arson. . He specifies as error, among other things, that the evidence is insufficient to support the verdict and that the verdict is contrary to the ▮ law. It is the well settled rule of this court that the verdict will not be disturbed if supported by substantial evidence. (See cases cited in 4 Montana Digest, Criminal Law, Key No. 1159.)

The defendant owned a farm upon which were located certain ▮ buildings. All of these buildings were insured against fire prior to July 18, 1941. On that date the buildings were burned. The conviction must rest largely upon the testimony of Lester D. Lamb, an employee of the defendant who was staying on the farm with the defendant on the date of the fire. The testimony is that he and the defendant planned the fire and that he proceeded methodically to carry out that plan. The testimony of this witness, if believed, was more than ample to establish the guilt of the defendant. This evidence, however, comes from the lips of the confessed accomplice. By section 11988, Revised Codes 1935, we are directed that a conviction may not be had upon the uncorroborated testimony of such person. The corroborating testimony must tend to connect the defendant with the commission of the crime, and it is not sufficient if it merely shows the commission of the offense or the circumstances thereof. (Sec. 11988, Rev. Codes 1935.)

The witness French testified that prior to the fire the defendant had offered him $50 to burn the buildings. The witness

Roberts testified that defendant questioned him in detail as to the habits of one of defendant's neighbors, John Miller. Miller was regularly employed in the city of Helena and defendant sought to obtain from Roberts information as to what time Miller arose in the morning and when he returned. Miller's place was so close to that of the defendant that he could see a fire or anything else unusual that might occur on defendant's property.

The testimony of Lamb, corroborated, as it was, not only by the testimony above set out but by the physical facts and the behavior of the defendant, amply supported the verdict.

Error is specified on the remarks made by the district judge in the course of the trial. Upon the cross-examination of one of the state's witnesses the court ruled upon an objection to certain testimony in these words: ''Objection sustained. It is immaterial and repetitious.'' No showing was made by offer of proof or otherwise that the testimony ruled upon was material or that it was not repetitious. The burden was upon the defendant to make that showing so that the trial court could have an opportunity to correct its error, if any were made. We cannot say from the record presented that the ruling of the court was error.

The other remark made by the trial judge to which objection was made was as follows: ''The court: We have treated about generators, automobiles and wires, and every one that lived in Basin and vicinity, but we are not trying this law suit. We are going to get through this case before Christmas. Objection sustained.'' The objection was made while defendant's attorney was cross-examining the witness French, endeavoring to show animosity between the witness and the defendant. After the ruling of the court, defendant's counsel stated that his purpose in asking the question to which the objection was sustained was to lay a foundation for showing the existence of animosity on the part of the witness toward the defendant. The court informing him that he had done so, defendant's counsel acquiesced with these words, ''all right, with the understanding that I have laid a foundation for future evidence.'' The case of

*State* v. *Davis*, (Mo. Sup.), 217 S. W. 87, is cited by defendant in support of his argument that the remarks of the court are prejudicial error. In a matter such as this the facts of the case only may be relied upon to determine whether or not any particular remark and ruling of the trial judge is prejudicial error. Here it was certainly not error to sustain the objection since the foundation had already been laid for the testimony counsel wished to introduce later, and under the circumstances we find nothing in the remarks of the court which would tend to prejudice the defendant.

Error is specified on the court's refusal to permit the introduction of testimony showing that defendant bought insurance on his buildings only after solicitation on the part of an insurance salesman. This testimony could only have served to show that the defendant, at the time he purchased the insurance, did not have any notion of burning the buildings in order to collect the insurance money. The testimony contained in the offer of proof was admissible, but it had already been admitted by the state through its witness, the insurance salesman, that the salesman had solicited the insurance business from the defendant, and not vice versa. The court has definite latitude in expediting the trial. It can prevent cumulative and repetitious testimony from delaying it. There was not error in excluding the testimony.

Error is specified on the admission of certain testimony as to conversations held between the witnesses on the stand and one of the defendant's witnesses, it being objected to as hearsay as not having been in the presence of the defendant. This testimony was elicited for impeachment of the defendant's witness only and was properly admissible.

Error is specified on the giving of certain instructions by the court. The first instruction is as follows:

"You are instructed that altho you may sympathize with those who suffer or may suffer, as a result of this trial, yet as men and women, bound by your oath, to administer justice according to the law and the evidence, you should not act

upon your sympathies or prejudices, if any, for or against the defendant or any other person, or persons, in deciding this, case.

"No question of mercy, sympathy, sentiment or anything else should reside with you in arriving at your verdict, except the question of whether or not you believe from all the evidence beyond a reasonable doubt that the defendant is guilty as, charged."

In defendant's view, this instruction is tantamount to advising the jury that the defendant was guilty. He bases this conclusion upon the fact that there was no evidence tending to create any sympathy in the case. Defendant cites a number of cases dealing with instructions similar to this where the court held that the particular instruction assumed that the defendant was guilty. We cannot so read the instruction here given. The last words of the instruction clearly negative any suggestion that the court considered the defendant guilty but clearly left the determination of that fact to the jury. Sympathy might be aroused in the jury without any testimony tending to create it, by the appearance of the defendant or by any one of a number of things occurring at the trial. While there may be a question concerning the necessity or the desirability of an instruction such as this in every case, under the circumstances here it certainly was not prejudicial.

The last portion of the instruction on reasonable doubt reads as follows: "A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict, is not a reasonable one, and a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to a possible state of facts differing from that established by the evidence; you are not at liberty to disbelieve as jurors if you believe as men; your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered."

The purpose of this instruction apparently was to distinguish between a reasonable doubt and trivial or fanciful ones. The

court in this case has attempted a further definition of the term "reasonable doubt" than is found in the stock instructions. We do not think that these stock instructions, tested over the years as they have been, need any elaboration. (See Underhill on Criminal Evidence, 4th Ed., p. 26; Note 96 Am. St. Rep. 210.) We cannot say, however, in this case that anything in this part of the instruction, particularly in view of the other instructions as to burden of proof, reasonable doubt and the requirement that the jury must be guided only by the evidence before it, has prejudiced the defendant.

Defendant urges that the latter portion of the quoted part of the instruction would lead the jury to believe that it could base its verdict on something else besides the evidence. The cases cited in support of that view are found in the recent case of *State* v. *Wong Sun, ante* p. 185, 133 Pac. (2d) 761. This argument of the defendant and the cases he cited are considered in that case. There is no need now for us to here reconsider the matter. What is there said is controlling.

Finally defendant specifies error on the action of the trial court in denying his motion and supplemental motion for a new trial. The application sets out certain statements of the witness Lamb which he was alleged to have made after the trial. The following statements are said to have been made by the witness, speaking to a third person: "Well, you thought you were pretty smart to go over and testify against us. But it didn't do you any good, we got him anyway. [Apparently referring to defendant.] We had that all fixed up." And further: "Red and I, we got him where we want him." Defendant relies on what is said in *State* v. *Hamilton,* 87 Mont. 353, 287 Pac. 933, 937: " 'Where the impeaching evidence may demonstrate perjury in the witness upon whose evidence the verdict was founded and but for which conviction could not have been had,' a, new trial should be granted. [Citing cases.]"

The alleged statements of the witness do not show perjury nor even tend to show perjury. The most that can be said of them is that they tend to show malice on the part of the witness toward

the defendant, and they do not bring the case within the rule of *State* v. *Hamilton* above. No error was committed in refusing to grant a new trial.

The judgment is affirmed.

Associate Justices Morris, Anderson, and Adair, and Hon. R. E. McHugh, District Judge sitting in place of Mr. Chief Justice Johnson, disqualified, concur.

On Motion for Rehearing.

PER CURIAM.

For the first time, in the petition for rehearing, defendant ▮▮▮ urges that the cross-examination of Strait was improper when he was questioned concerning statements which he, Strait, had made to the witness Roberts and that in asking these questions the state made Strait its witness because the questions propounded to him, it is argued, are not within the scope of proper cross-examination. No objection was made by the defendant to these questions on any grounds. To carry the matter a step further, the defendant now argues that since, in his view, this testimony by Strait was as a witness for the state, the testimony of Roberts, which we held proper for the purpose of impeachment, was not properly admissible since a party cannot impeach his own witness. (*State* v. *Smith,* 57 Mont. 563, 190 Pac. 107.) Here again this objection was not made to the admissibility of this testimony. The objection to the testimony of Roberts was based entirely on the theory that it was hearsay because the statements were not made in the presence of the defendant. Even if the cross-examination were not proper, which we do not hold, it is too late upon the petition for rehearing in this court to raise the objection. The trial court may not be put in error in a matter like this without an objection having been made in the trial of the cause so as to permit the court to make a proper ruling.

The petition for rehearing is denied.