STATE OF MONTANA, Plaintiff and Respondent, v. GER-ALD T. GREENO, Defendant and Appellant.

No. 9940.

Submitted March 13, 1959. Decided July 21, 1959.

Rehearing Denied September 2, 1959.

342 Pac. (2d) 1052.

MR. JUSTICES ANGSTMAN and CASTLES, dissented.

Sandall, Moses & Cavan, Billings, Charles F. Moses, Billings, argued orally, for appellant.

Forrest H. Anderson, Atty. Gen., Gordon R. Bennett, Asst. Atty. Gen., William J. Speare, John L. Adams, Jr., Billings,, Gordon R. Bennett, Asst. Atty. Gen., and John L. Adams, Jr., argued orally, for respondent.

MR. JUSTICE BOTTOMLY:

This is an appeal by Gerald T. Greeno from a judgment of conviction of the crime of grand larceny made and entered on the 13th day of March 1958, and from an order denying him a new trial.

On appeal some fourteen specifications of error are set out, many of the errors alleged having to do with offered and rejected instructions. However, since this case must be returned to the district court for a new trial we shall confine our opinion only to the specification of error relating to the denial of a new trial and one specification of error we shall discuss later in this opinion.

The facts concerning the denial of the motion for new trial are these: The specific larcenous act which it was alleged Gerald Greeno committed was that he had stolen or ":rustled" some eight head of Hereford cattle which cattle were the property of one Norman F. Miller, a rancher whose lands and cattle were located some thirty miles from where the alleged Miller cattle were found, and some thirty miles from defendant's ranch.

At the trial of this case, it was brought out that the defendant Greeno was aware of the fact that Miller was the owner of some eighty head of Hereford cattle; that Miller ranged these cattle in a pasture situated some twenty miles south of Billings, Montana; that the cattle were not closely attended and that some of them were unbranded.

The testimony was that sometime in the latter part of September, Miller had counted his cattle and determined that approximately sixteen head were missing; that Miller then conducted a search for the missing cattle and found two of them; that from approximately the 1st day of October 1957, until the 9th day of January 1958, the remaining cattle could not be found although a diligent search was conducted for the missing cattle; that thereafter on the 9th day of January 1958, the district brand inspector, a deputy sheriff and others, including Norman Miller's father, proceeded to a ranch owned by one Robert Percy Crocker and there asked if they could ride his range; that after permission was granted by Crocker; this group rounded up some sixty head of cattle, all bearing various brands, among which were some eight head of cattle which Norman Miller's father and Norman Miller later identi-

fied as the cattle owned by Norman Miller which had been missing since approximately the 1st day of October 1957. All of these eight cattle, at the time they were rounded up on the Crocker ranch, bore a brand on their right side described as an A bar T, three stories high. It was shown that this brand is the registered brand of the defendant, Gerald Greeno. These A bar T branded steers were found on the Crocker ranch which ranch is situated some twenty or thirty miles distant from the home of Gerald Greeno. Greeno testified at the trial and denied ownership of these A bar T branded steers, asserting he owned only cows and calves; that in his cattle business he never kept steers. Crocker likewise denied ownership of the A bar T branded steers. Greeno testified that he had visited the Crocker place October 22, 1957, for the purpose of picking up a horse he was to break for another person. These facts comprised the essential record exclusive of the testimony of one Chuck Armstrong. Armstrong's testimony at the trial and his subsequent statements form the basis for the motion for a new trial.

At the trial Armstrong testified, in substance, that he was an acquaintance of Crocker; that on or about October 22, 1957, he had dropped in for a visit at the Crocker ranch; that Crocker was absent but Gerald Greeno was present and was going to brand some cattle; that he, Armstrong helped Greeno brand some eight or ten head of two year old white face Hereford steers; that he had helped build a fire for the purpose of branding the animals, helped herd the steers into a shute and that Gerald Greeno had branded them. He testified that the brand placed upon the animals by Greeno was an A bar T brand; that in addition other cattle were branded with another brand described as being an X reverse F brand, that this brand belonged to Crocker. Armstrong further testified that although he himself had an injured hand, he had in fact branded one of the steers with the X reverse F brand; that he was not paid for his work in helping brand the animals; that Greeno had said the animals branded with Crocker's brand belonged to Crocker; and that the steers he had helped brand with the

A bar T brand and the X reverse F brand were the same steers which he saw in the Billings Livestock Commission yards, and were the same steers that Norman Miller identified as the steers missing from his pasture.

Armstrong further testified that when he and Greeno were at the Crocker ranch, Crocker was not at home. After this testimony was given it was brought out that Armstrong had been questioned prior to the trial by a deputy sheriff of Yellowstone County and also by one of the defense attorneys for Gerald Greeno; that when so questioned Armstrong had said that he had been out to Crocker's place and had seen some cattle branded; that he specifically did not brand any cattle himself because of his bad hand; that he could not identify any of the brands placed upon the cattle; that he could not say whether any cattle had been branded on the left side; and that he could not identify the cattle at the Billings Livestock Commission yards as being those same cattle which he had helped to brand.

Armstrong's testimony as a witness differed from the story he had told prior to the trial. He explained this difference by saying "Because I helped brand them, I didn't want to get involved."

Armstrong was the key witness at the trial. After Greeno's conviction a motion for a new trial was presented and filed. The basis of the motion for new trial was set out in the affidavit of the attorney for the defendant as follows:

"That your affiant was informed by the County Attorney on March 12, 1958, at 1:00 o'clock p.m. of said day, that the witness, Charles Armstrong, had had a conference with the County Attorney's staff and has now made the following statements in connection with the testimony in this case:

"(a) That approximately one week prior to the alleged branding he was called on the telephone by Percy Crocker and requested to be present on October 22, 1957, to aid the said Percy Crocker in branding some animals;

"(b) That on October 22, 1957, he appeared at the Crocker

ranch at the request of Mr. Crocker, and Mr. Crocker was rounding up and placing in the corral the animals identified by the witness as belonging to Norman A. Miller and otherwise had the care, possession and control of said animals;

"(c)    That Mr. Crocker left the premises but returned shortly after lunch and participated in the care of said animals and their branding and knew of the presence of said animals upon his premises at that time and the brands placed thereon and the condition of said animals and the fact that the animals had been branded and that not all of the animals had been branded prior to the time when the said Charles Armstrong left the premises and that Mr. Crocker had knowledge of the presence of said animals and their condition and the branding and participated therein; that his testimony on the stand, which was contrary to his present statement, was given for the reason that he wished to protect Mr. Crocker and that such statements made by him were not in fact true in several material particulars, as above set forth, and that the substance of his statements now made to the County Attorney's office on March 12, 1958, incriminated said Percy Crocker completely and is contrary to the statements made by the witness at the time of the trial."

At the hearing on the motion for new trial, the county attorney would not refute the affidavit, nor would he support it with an affidavit of his own. The witness Armstrong refused, prior to the hearing on the motion for new trial, to give the county attorney a sworn statement of what he asserted after the trial was the true situation, and Armstrong also refused to give the defense attorneys a sworn statement.

To counteract the effect which the absence of the affidavit of Armstrong might have upon their motion for new trial, the defense attorneys had Armstrong subpoenaed to give oral testimony to support the motion for new trial. At the hearing it was disclosed that after Armstrong had given the county attorney his statement after trial, in which he materially changed some of the aspects of his testimony at the trial, he then re-

fused to tell the county attorney anything more. At the hearing on motion for a new trial the witness Charles Armstrong was called, and the Court inquired of him·whether or not he was willing to testify in connection with the motion for new trial, to which Armstrong replied ''No.''

The court declined to compel Armstrong to testify. Armstrong was then asked if he had refused to make an affidavit in support of the defendant's motion for new trial, to which he replied he had refused. He further testified that he had· refused to make an affidavit or sworn statement· for the county attorney.

The motion for a new trial was based upon that part of section 94-7603, R.C.M. 1947, which provides in part:

''When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial in the following cases only: * * *

''7. When new evidence is discovered material to the defendant and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable.''

While broad discretion is lodged in the trial court in respect to the motion for new trial upon the ground of newly discovered evidence, denial of the motion is not conclusive, the order is subject to review by this court on appeal. See State v. Gangner, 73 Mont. 187, 235 Pac. 703 and also section 94-8103, R.C.M. 1947.

The rules, governing application for new trials on the ground of newly discovered evidence, were laid down by this court in the case of State v. Matkins, 45 Mont. 58, 121 Pac. 881, 885. There the court held:

"Applications for new trials on the ground of newly discovered evidence are not favored by the courts. The reason is that the moving party has already had a hearing after ample opportunity to prepare his case, and that, while smarting under defeat and disappointment, he is under strong temptation to manufacture a plausible showing in support of his motion. He may be entirely willing to take the chances of a new trial, but unwilling or afraid to swear to a statement necessary to procure it. It is often the case that the sense of loss arouses him to the diligent activity which he should have put forth before the trial. By importunity he then interests his friends and through them brings to his support evidence which, if not false, is only cumulative or impeaching in character, and the efficacy of which to produce a different result is speculative and dependent entirely upon the personal characteristics of another jury. The courts have, therefore, formulated rules within which they hold the particular application must be brought, or it will not avail. They are enumerated in Berry v. State, 10 Ga. 511, substantially as follows: (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely — that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness. To some of these there may be, and doubtless are, exceptions. For illustration: The cumulative evidence may be so overwhelmingly convincing as to compel the conclusion that to sustain the verdict would be a gross injustice, *or the impeaching evidence may demonstrate perjury in the witnesses upon whose evidence the verdict is founded.* Again, the evidence may be in the form of written documents

which from their character may be conclusive of the rights of the parties. When the evidence is of the character last mentioned, an affidavit is not indispensable, unless to authenticate the writings, if necessary. However this may be, the rules enumerated above were early adopted and have been uniformly observed by this court throughout its history, as appears from the following cases: Caruthers v. Pemberton, 1 Mont. [111] 112; Kleinschmidt v. Dunphy, 1 Mont. 118; Morse v. Swan, 2 Mont. 306; Garfield M. & M. Co. v. Hammer, 6 Mont. 53, 8 Pac. 153; Territory v. Clayton, 8 Mont. 1, 19 Pac. 293; Territory v. Bryson, 9 Mont. 32, 22 Pac. 147; Leyson v. Davis, 17 Mont. 220, 42 Pac. 775, 31 L.R.A. 429; State v. Gay, 18 Mont. 51, 44 Pac. 411; Holland v. Huston, 20 Mont. 84, 49 Pac. 390; Baxter v. Hamilton, 20 Mont. 327, 51 Pac. 265; State v. Brooks, 23 Mont. 146, 57 Pac. 1038; Elliott v. Martin, 27 Mont. 519, 71 Pac. 756; In re Colbert's Estate, 31 Mont. 461, 78 Pac. 971, 80 Pac. 248, 107 Am. St. Rep. 439, 3 Ann. Cas. 952; State v. Wakely, 43 Mont. 427, 117 Pac. 95. To these rules may properly be added still another, viz., that it must appear to be within reasonable probability that the evidence is within reach of the moving party and that he can produce it at the trial.'' Emphasis supplied.

These rules have been consistently followed by this court since that time. See State v. Belland, 59 Mont. 540, 197 Pac. 841; State v. Mott, 72 Mont. 306, 233 Pac. 602; State v. Gangner, 73 Mont. 187, 235 Pac. 703; State v. Hamilton, 87 Mont. 353, 287 Pac. 933; State v. Curtiss, 114 Mont. 232, 135 Pac. (2d) 361.

The question presented here is whether this application falls within the formulated rules. There is no question that the first rule is satisfied, the application is based *upon the fact the witness after trial made statements* demonstrating the testimony he gave at the trial was false and perjurious.

Second, it would of course be impossible to discover a recanting statement made after the trial prior to the trial.

Third, this evidence undoubtedly would produce a different

result upon another trial. The statements, made after trial by the witness Armstrong, cast an entirely different light upon what actually occurred at Percy Crocker's ranch on October 22, 1957, than was shown at the trial.

When Armstrong's recanting statements, after the trial, are examined in conjunction with his statements prior to the trial and at the trial, it is apparent that he has never desired to tell the truth nor did he under oath testify to the truth, and it was never his intention that the true circumstances of the persons present and their activities at the Crocker ranch on October 22, 1957, be known.

The new facts discovered after the trial in regard to both Armstrong and Crocker would make it entirely possible that if this cause were retried, these witnesses would be testifying as principals and as accomplices, with the result their testimony would have to be received, if at all, under the restrictions as provided by law.

The statements made by Armstrong after the trial impeach his testimony given at the trial. It appears that perjury is present here.

State v. Hamilton, supra, 87 Mont. at page 367, 287 Pac. at page 937, quoting from State v. Mott, supra, 72 Mont. at page 317, 233 Pac. at page 607, states:

" 'Where the impeaching evidence may demonstrate perjury in the witness upon whose evidence the verdict was founded and but for which conviction could not have been had,' a new trial should be granted. State v. Belland, 59 Mont. 540, 197 Pac. 841."

Fourth, the evidence is not merely cumulative, the facts set out in the application were new facts, not brought out at the trial, and obviously could not have been had thereat.

Fifth, the absence of the affidavit of Armstrong was accounted for on the day of hearing the motion for new trial when, under direct questioning by the court, the witness Armstrong never denied the truth of defendant Greeno's affidavit, and refused without any reason to give any affidavit or testimony

himself. This accounted for the absence of Armstrong's affidavit. In the furtherance of justice it appears that the county attorney could have cleared up this matter by giving an affidavit. He never rightfully denied the truth of defendant's affidavit. He declined to give an affidavit himself. This accounted for the absence of his affidavit. The county attorney can not now complain of the lack of any affidavits when he himself refused to give one in full justice to the defendant. The lack of the affidavits is fully covered.

Sixth, this evidence does more than impeach the character or credit of a witness. It impeaches the sworn testimony given at the trial by the state's principal witness Armstrong which resulted in defendant's conviction of a felony. It now appears that the sworn evidence Armstrong gave at the trial was false. Such being the case this defendant did not have a fair trial.

As to the seventh rule it appears that such newly discovered evidence can be used at a new trial. Armstrong can be compelled to testify unless he wishes to exercise his constitutional rights *if he believes his testimony might incriminate him.* But if such is the case, it amply demonstrates that this defendant did not have a fair trial because the principal witness was not only a principal in the alleged crime but his testimony was false. It is one thing for a witness to testify as truthfully as a principal or an accomplice and let the evidence be so weighed; but quite another thing for the witness to conceal the truth while testifying under oath so that he appears as a completely innocent witness with all the weight which must be given such a witness. It was this very circumstance that induced the lawmakers to require the proof of an alleged crime to be made out by testimony independent of a principal or accomplice. We are given the chance to let this defendant have a new and fair trial as guaranteed by federal and state constitutions.

As a new trial is to be granted, only one other matter in this case requires our comment, that is, the following Instruction No. 28 given by the court:

"You are instructed that the mere possession of stolen prop-

erty, howsoever soon after the taking, unexplained by the person having possession is not sufficient to justify conviction. It is, however, a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. If you should find from the evidence that the property involved in this case was stolen, and that thereafter the defendant was found in possession or claimed to be the owner of the stolen property, such a fact would be a circumstance tending in some degree to show guilt although not sufficient, standing alone and unsupported by other evidence, to warrant finding him guilty. In addition to proof of possession of such property there must be proof of corroborating circumstances tending, of themselves, to establish guilt. Such corroborating circumstances may consist of the acts, conduct, falsehood, if any, or other declarations, if any, of the defendant, or any other proved circumstance tending to show the guilt of the accused.

*"One who is found in the possession of stolen property is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with all other evidence, pointing to his guilt, and if he gives a false account of how he acquired that possession or, having reasonable opportunity to show that his possession was honestly acquired he refuses or fails to do so, such conduct is a circumstance that tends to show his guilt."* Emphasis supplied.

The last paragraph of this instruction is erroneous.

R.C.M. 1947, section 94-7203, provides:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

In addition, R.C.M. 1947, section 94-8803, provides:

"A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but he may be sworn, and may testify in his own behalf, and the jury in judging of his credibility and the weight to be given to his

testimony, may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused. *If the defendant does not claim the right to be sworn, or does not testify, it must not be used to his prejudice, and the attorney prosecuting must not comment to the court or jury on the same."* Emphasis supplied.

The defendant, presumed to be innocent, is not charged with any duty to explain his possession of any property stolen or otherwise. He need not testify at the trial and this fact may not be commented upon in any way prejudicial to the defendant. The burden of explaining set out in the instruction deprives the defendant of his cloak of innocence and forces him to testify, both results being contrary to express statutes of the State of Montana. The State argues however that this portion of the instruction is valid upon the authority of State v. Sparks, 40 Mont. 82, 105 Pac. 87, 88, and State v. Willette, 46 Mont. 326, 127 Pac. 1013, which affirms the Sparks case, supra.

In State v. Sparks, it was held: "It has been held by this court, following the rule recognized by the courts generally, that mere possession of property recently stolen is not sufficient to convict the possessor of a larceny of it. Territory v. Doyle, 7 Mont. 245, 14 Pac. 671; State v. Sullivan, 9 Mont. 174, 22 Pac. 1088; State v. Wells, 33 Mont. 291, 83 Pac. 476. When, however, this fact is supplemented by other facts inconsistent with the idea that the possession is honest, such as the giving of a false or improbable explanation of it, or a failure to explain, when a larceny of the property is charged, or the possession of a forged bill of sale, or the giving of a fictitious name, or the like, a case is made sufficient to submit to the jury. Territory v. Doyle, State v. Sullivan, State v. Wells, supra. *The rule as to the materiality of such evidence is well stated by the Supreme Court of Maine, in State v. Bartlett, 55 Me. 200, as follows:* 'If a person accused remains silent when he may speak, he does so from choice, *and the choice he makes upon such occasions has always been regarded competent evidence.* It is the act of the party. *From time immemorial the*

*reply or the silence of the accused person, when charged, has been regarded as legitimate evidence on his trial for the consideration of the jury.* Any act of his, when charged, tending to sustain the charge, may be proved. Fleeing from arrest, giving contradictory, untrue, or improbable accounts of the matters in issue, *and refusals to account for the possession of stolen property, are evidences of guilt admitted upon the trial of the persons accused.* These are proofs derived from the prisoner's acts, sayings, *and silence'."* Emphasis supplied.

What is significant in that case however is that the rule pertaining to explanation *by the defendant is based upon the case of State v. Bartlett, 55 Me. 200, supra, which law provided when the Bartlett case was decided that the fact that a defendant does not testify was a proper fact for the consideration of the jury in determining the guilt or innocence of the accused.* This, of course, is not the law in Montana now, was not at the time of the above decision, never was the law in Montana, and is contrary to our statutes and our Constitution. *This holding was directly contrary to our written law.* For this reason, the cases of State v. Sparks, and State v. Willette, supra, *to the extent they impose upon a defendant a burden to explain or testify concerning any charge of possessing stolen goods, are directly overruled.* Courts will always grant a new trial where it appears there has been a trace of perjured testimony presented to the jury resulting in a conviction.

It is the policy of the law and the law of the land to see to it that every person accused of crime shall have a fair trial, and hence a new trial will be granted wherever it is apparent that otherwise there might be a miscarriage of justice. See 23 C.J.S. Criminal Law, section 1427, page 1125; 39 Am. Jur., new trial, section 169, page 175, Perjury of Witness at Trial; Recantation by Witness, and cases cited therein.

The conscience of the courts are charged with this duty, and in doubtful cases notwithstanding the verdict of the jury, the courts will order a new trial. People v. Masterson, 96 App.

Div. 610, 88 N.Y.S. 747; Maland v. Tesdall, 232 Iowa 959, 5 N.W. (2d) 327, 332.

To assure this defendant due process, and a fair trial as provided by the statutes and Constitution, the case is remanded to the district court; the order of the district court denying a new trial herein is set aside, held for naught, and a new trial ordered.

MR. JUSTICE ADAIR, concurs.

THE HONORABLE LESTER H. LOBLE, District Judge (concurring).

I concur in the result, but not with all that is said in the opinion.

MR. JUSTICE ANGSTMAN, (dissenting).

I do not agree that this defendant was in any manner prejudiced by the giving of the instruction set out in the opinion of MR. JUSTICE BOTTOMLY. Defendant here took the witness stand and testified in his own behalf. He waived the right granted by section 94-8803, R.C.M. 1947, to refuse to be a witness. Having testified in his own behalf, it was entirely proper to instruct the jury as to the consequences of unexplained possession of stolen property.

As to the newly discovered evidence I think the trial judge was in a much better position than are we to weigh the question as to whether a different result would likely be reached were a new trial granted within the rule declared in State v. Matkins, 45 Mont. 58, 121 Pac. 881. Most of the new matter would do nothing more than implicate Mr. Crocker as a participant in the crime. Some of it is merely cumulative and the record is open to the conclusion that it might, with reasonable diligence, have been discovered at or before the trial.

I think the granting or refusing of a new trial under the circumstances here was peculiarly within the discretion of the trial judge, and that we should not disturb his ruling. I would affirm the judgment.

MR. JUSTICE CASTLES, (concurring).

I concur. in MR. JUSTICE ANGSTMAN'S dissenting opinion.

## ON PETITION FOR REHEARING

MR. JUSTICES BOTTOMLY and ADAIR:

Respondent's petition for rehearing herein is hereby denied.

THE HONORABLE LESTER H. LOBLE, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, (concurring in denial of petition for rehearing).

In the petition for a rehearing filed by the State, plaintiff and respondent, it is said and I quote:

"District Judge Loble concurred in the result of the decision but not in all of its reasoning. The specially concurring opinion of Judge Loble specifies no point at which his reasoning departs from that of the main opinion. Whether there was agreement on both grounds for granting the new trial is not at all clear to this respondent."

The State of Montana, plaintiff and respondent, is entitled to have an answer to that inquiry. So that there may be a clarification of my views in concurring in the result arrived at in MR. JUSTICE BOTTOMLY'S decision, and further in my concurrence in the denial of the plaintiff and respondent's petition for a rehearing — let it be stated that I concur in the result indicated *solely* upon the ground that in my opinion MR. JUSTICE BOTTOMLY, in his decision, correctly stated that a new trial should be granted the defendant and appellant by reason of the facts and circumstances shown by the record, relating to the recantation of the testimony of the witness Armstrong, and which MR. JUSTICE BOTTOMLY discussed in the first part of his opinion.