No.  95-352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

PAUL KENNETH
JENKINS,

Defendant and Appellant.


APPEAL FROM:      District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Randi M. Hood, Public Defenderþs Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Patricia J. Jordan,
Assistant
Attorney General, Helena, Montana; Mike McGrath, Lewis and
Clark
County Attorney, Carolyn Clemens, Deputy Lewis and Clark County
Attorney, Helena, Montana


Submitted on Briefs: May 1, 1997

Decided:

Filed:

_____
Clerk


Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Defendant-Appellant Paul Kenneth Jenkins (Appellant) and co-defendant Freddie Joe Lawrence (Lawrence) were charged with deliberate homicide, aggravated kidnaping, and robbery.  Defendants were tried simultaneously but with separate juries in the First Judicial District Court, Lewis & Clark County.  Each jury found its respective defendant guilty on all counts and judgments of conviction were entered.  (See companion case of State v. Lawrence, No. ADC 94-215, Lewis and Clark County; Mont. No. 95-357).  Defendants appealed their convictions and we consider each appeal separately.  Appellant appeals the jury verdict and judgment of conviction of the First Judicial District Court, Lewis & Clark County.  We affirm.

Appellant raises the following issues on appeal:

1.  Did the District Court err by allowing into evidence letters written to Appellant by his spouse, Mary Jenkins?

2.  Did the District Court err in admitting Mary Jenkinsþ prior inconsistent statements and Officer McCormackþs testimony concerning Jimmy Lee Amos?

3.  Did the District Court err in refusing to grant Appellantþs motion for a new trial on the basis of newly discovered evidence?

4.  Did the District Court err in refusing to grant Appellantþs motion to dismiss the case for insufficient evidence?


BACKGROUND

On the morning of January 12, 1994, the body of Donna Meagher (Meagher) was discovered in a ditch west of Helena.  Meagher had been working the night before at the Jackson Creek Saloon in Montana City and had failed to come home as scheduled.  After her last customer left sometime after midnight, Meagher, working alone, closed the bar.  Shortly thereafter, Meagher was confronted by her assailants, who forced her to reopen the bar.  The assailants robbed the cash register and poker machines, taking approximately $3,300.  Aside from the missing money, the bar was largely undisturbed.  Meagherþs truck was moved from the barþs parking lot to a location behind a building across the street.  Meagher was then transported through Helena to a location west of town, where she was bludgeoned to death.  Her body was found at that location the next

day.

Meagherþs murder generated extensive publicity in the Helena area and a substantial reward was offered to anyone providing information leading to the arrest and conviction of the perpetrators. Authorities were subsequently contacted by Dan Knipshield (Knipshield), Lawrenceþs father-in-law, who implicated Lawrence and Appellant in the crime.

On August 31, 1994, three law enforcement officers traveled to West Yellowstone to talk to Lawrence, who was incarcerated in the Park County jail on an unrelated offense. During the interview, Lawrence denied any involvement in the crime but implicated Appellant and another man, Jimmy Lee Amos (Amos), as being responsible.

Based on the information obtained from Knipshield and Lawrence, law enforcement officers traveled from Montana to Oklahoma to interview Appellant, his spouse Mary Jenkins, and Amos. At the conclusion of the police investigation, Appellant and Lawrence were arrested and charged with the robbery, kidnaping and homicide. The defendants were tried simultaneously before different juries and both were convicted on all counts.

## DISCUSSION

### Issue 1

Did the District Court err by allowing into evidence letters written to Appellant by his spouse, Mary Jenkins?

The standard of review for evidentiary rulings is whether the district court abused its discretion. State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion. Gollehon, 864 P.2d at 1263.

While Appellant was incarcerated and awaiting trial, he and his wife, Mary, corresponded by letter. After reading Maryþs letters, Appellant tore them up into little pieces and put them in the trash. Investigators with the Lewis and Clark County Sheriffþs Department picked up Appellantþs trash from the jail and reassembled some of Maryþs letters. The State attempted to introduce these letters into evidence, once at a pre-trial competency hearing, and again at trial. Appellant asserts that the District Court twice violated the spousal privilege when it admitted Maryþs letters into evidence first at the pre-trial competency hearing and later at trial. We consider Appellantþs specifications of error at the pre-trial and trial stages separately.

### A. Pre-trial Competency Hearing

On February 7, 1995, the District Court held a pre-trial hearing to determine the competency of Mary Jenkins. During Maryþs testimony, the State attempted to introduce

her letters to show that she could express herself and communicate with others. Appellant objected to admission of the letters on the basis of spousal privilege. The District Court responded:

I am going to reserve my ruling on those letters. I prefer being able to determine her competency based on her testimony today rather than something she has written in the past.

Later in the hearing, when Officer McCormack took the stand, the State again attempted to introduce Maryþs letters, and Appellant again objected on the ground of spousal privilege. The following exchange then took place:

[Court]: Okay. The spousal privilege does not apply because the letters are not being introduced for the truth of the matters contained in the letters. The letters would only be introduced to show that Mary [can] communicate

. . . .

[Lawrenceþs Defense Counsel]: Your Honor, before you consider the letters I would just like the record to reflect that I didnþt see these letters until yesterday . . . . I would like the ability to reserve any objection and your review of the letters until such time as we have had a chance to look at them.

[Court]: All right. I will go ahead and take a look at the letters and after you have looked at the letters we will meet in chambers and discuss the exhibit.

The court took the matter under advisement and ended the hearing. Later that afternoon, in chambers, the court ruled that Mary was competent to testify. As to the letters, the court ruled:

I donþt feel the need to consider those letters and I am refusing the admission of those letters as to evidence. I decided I could rule on Maryþs competence without those letters.

On appeal, the State contends that no error occurred because the District Court never admitted the letters. The State argues that Appellant mistook the courtþs statement, "The spousal privilege doesnþt apply . . ." as the courtþs ruling on the matter, when in fact, at the request of Appellant, the court took the matter under advisement. We agree with the State. The portion of the record set out above reveals that the District Court refused admission of the letters, as they were not needed in determining Maryþs competency. Therefore, we conclude that because the letters were never admitted at the competency hearing, no error occurred.

### B. At Trial

At trial, Appellant planned to call Dr. William Stratford to testify about his psychological examination of Mary and his diagnosis that she suffered from dementia. The State then filed a motion in limine asking the court to permit its use of Maryþs

letters in cross-examining Dr. Stratford. When the court discussed the motion with counsel in chambers, Appellant again objected to admission of the letters on the basis of spousal privilege. However, Appellant then conceded to admission of the letters for the limited purpose of showing that Mary could communicate. Appellant stated:

I am willing to have Dr. Stratford read the letters and comment upon, you know, if she [sic] wants to say well she writes real nice letters, he can explain that. That is not inconsistent with his diagnosis.

In ruling on the motion, the court permitted the State to use only "one or two" letters in cross-examining Dr. Stratford, and held that such use did not violate the spousal privilege because the letters were being admitted not through a spouse, but through a third party. After the courtþs ruling, the following exchange took place:

[Jenkinsþ Defense Counsel]: Your Honor, I would presume that the courtþs ruling only goes to those letters going in if they become relevant.

[State]: Well I think the jury needs to make that decision.

[Jenkinsþ Defense Counsel]: Well then we want to see which of these letters you produce because there are letters that are totally nonsense.

[State]: We wonþt produce the one that says she has told the neighbors they were home in bed when this happened. I presume we canþt get that one in.

[Lawrenceþs Defense Counsel #1]: Yeah you can.

[Lawrenceþs Defense Counsel #2]: Sure you can.

[Lawrenceþs Defense Counsel #1]: We donþt care.

[Jenkinsþ Defense Counsel]: So we want to know early on which ones--

[State]: Then I think we want that one.

[Court]: Okay. Now what was the other issue?

Later, when the State moved for admission of the letters, Appellant stated:

Your Honor, I donþt believe there has been a foundation laid on these, but because perhaps it is important for this witness to talk about them I wonþt object.

The State argues that Appellant failed to preserve this issue for appeal. The State cites õ 46-20-104(2), MCA, for the rule that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection," and points to the above excerpt from the

transcript as evidence that Appellant failed to object to the letters when they were being
admitted.

Appellant counters that his failure to object at trial was not a waiver of the objection, "but an appropriate trial tactic once the courtþs position on the spousal privilege
was clear." Appellant urges this Court to focus on his objection made in chambers rather
than his failure to object at trial. Appellant argues that the objection made in chambers
satisfied õ 46-20-104(2), MCA, as it was a timely, specific objection made in response
to the Stateþs motion in limine.

Appellantþs arguments are not persuasive. Whether Appellantþs trial tactic was
appropriate or not is not subject to our review. Applying the facts of this case to the law,
we conclude that because Appellant failed to timely object when the letters were being
admitted, he waived his objection for appeal. Appellant urges this Court to focus on the
objection made to the Stateþs motion in limine. We acknowledge recent Montana case
law holding that "a motion in limine preserves trial error for appeal." State v. Stuit
(1996), 277 Mont. 227, 230, 921 P.2d 866, 868. See also State v. Weeks (1995), 270
Mont. 63, 85, 891 P.2d 477, 490. However, we refuse to apply Stuit to this case because Appellantþs objection to the motion in limine was vitiated by his later agreement
to admit the letters. The record shows that Appellant and the State agreed to have the
letters admitted for the limited purpose of showing that Mary could communicate. The record also shows that the parties negotiated an agreement as to which letters the State
would use. Moreover, it appears from the above excerpt of the transcript that Appellant
thought the letter to be quite favorable. Indeed, Dr. Stratfordþs testimony regarding the
letter, that it was "childish," was favorable to Appellantþs position. Under these facts,
coupled with the fact that the letters contained no inculpatory evidence, we conclude that
Appellant failed to preserve his objection for appeal. Accordingly, we do not reach the
merits of Appellantþs argument.

Issue 2

Did the District Court err in admitting Mary Jenkinsþ prior inconsistent statements
and Officer McCormackþs testimony concerning Jimmy Lee Amos?

Appellant argues that the District Court erred in admitting Mary Jenkinsþ prior
statements made during several interviews with investigating officers. Appellant argues

that Mary's statements of "I don't remember" were consistent, rather than inconsistent,
with her trial testimony, and that the State failed to meet the foundational requirements
for admitting evidence under the hearsay exception for prior consistent statements. This issue is identical to that raised in the companion case, State v. Lawrence (Mont. No. 95-357, decided October 21, 1997), slip. op. at 18. In that case, we held that a claimed lapse of memory is an inconsistency within the meaning of Rule 801(d)(1)(A), M.R.Evid., and concluded that the District Court properly admitted the prior inconsistent statements. The discussion and analysis in Lawrence applies to this case as well. We hold that the District Court did not err in admitting Mary Jenkins' prior inconsistent statements.

Appellant also argues that the District Court erred in admitting Officer McCormack's statements that (1) he interviewed Jimmy Lee Amos; and (2) based on information he received, he learned that Mary was involved in the kidnaping portion of the alleged crimes. Appellant argues that the officer's testimony was inadmissible hearsay.

Once again, this same issue was raised in Lawrence. In Lawrence, we determined that when the two statements were viewed in the proper context, no reasonable jury would infer that Officer McCormack learned of Mary's involvement solely by information received from Amos. Further, we held that even if the jury made such an inference, the statements were still admissible because they were not offered for the truth of the matter asserted, and thus, not hearsay. The discussion and analysis in Lawrence applies to the instant case as well. We hold that the District Court did not err in admitting Officer McCormack's statements.

Issue 3

Did the District Court err in refusing to grant Appellant's motion for a new trial on the basis of newly discovered evidence?

Appellant contends that the District Court erred when it denied his motion for a new trial based on newly discovered evidence that: (1) Dan Knipshield, one of the State's witnesses, has episodic schizophrenia; and (2) Mary Jenkins, another witness for the State, has night blindness. Again, this issue is identical to that raised in Lawrence. In Lawrence, we applied the Greeno criteria (see State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052) to these two items of evidence and concluded that because they failed to meet the criteria, a new trial was not warranted. The discussion and analysis in Lawrence applies to the instant case as well. We hold that the District Court did not err in refusing to grant a new trial on the basis of newly discovered evidence.

Issue 4

Did the District Court err in refusing to grant Appellant's motion to dismiss

the
case for insufficient evidence?

Lastly, Appellant argues that given the lack of physical evidence, Mary Jenkinsþ dementia, and Dan Knipshieldþs lack of credibility, there was insufficient evidence to convict him of the alleged crimes.  Again, this issue is identical to that raised in Lawrence.  In Lawrence, we noted that circumstantial evidence is sufficient to support a conviction; that there was ample corroborating evidence connecting the defendant to the crimes; and that the credibility of witnesses was a question solely for the jury to decide.  The discussion and analysis in Lawrence applies to the instant case as well.  We hold that the District Court did not err in refusing to grant Appellantþs motion to dismiss the case for insufficient evidence.

Affirmed.

/S/  WILLIAM E. HUNT, SR.

We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART