The STATE OF MONTANA, Plaintiff and Respondent, *v.*
CHARLES A. GRAY, Defendant and Appellant.
No. 11485.
Submitted September 13, 1968. Decided November 22, 1968.
447 P.2d 475.

146

Weber, Bosch & Kuhr, Bradley E. Dugdale, argued, Havre, for appellant.

Forrest H. Anderson, Atty. Gen., Michael T. Greely, Asst. Atty. Gen., argued, Helena, Robert D. Morrison, County Atty., argued, Havre, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the opinion of the Court.

On August 8, 1967, Charles A. Gray, was charged by information filed in the district court of Hill County with the crime of burglary in the nighttime in Count I and with grand larceny in Count II. The defendant pleaded "not guilty" to both counts. On November 29, 1967, a hearing was held on the defendant's motion to discover and suppress. evi-

dence which motion was denied at the commencement of the trial on December 11, 1967. On December 13, 1967, the jury returned a verdict of "not guilty" of burglary and "guilty" of grand larceny. On December 15, 1967, judgment was entered sentencing the defendant to imprisonment in the state penitentiary for 12 years. From this conviction, judgment and sentence the defendant appeals.

The record discloses that some time between 6:00 p.m. on April 28, 1967 and 4:00 p.m. on April 29, 1967, the Harry Howard residence in Havre, Montana, was burglarized. Mr. Howard is a long established coin collector and his collection, valued at over $32,000, was taken from the house, along with various articles of jewelry. Among the items taken were several sets of paper bills which had been mounted on the walls of the house in plastic holders. These holders were pulled from the wall but parts of the torn edges remained attached to the wall. At the trial a Mr. Woodcock, an F.B.I. agent, identified two of these torn plastic pieces left on the wall, State's exhibits E1 and E2, as being part of the plastic holders, State's exhibits G1 and G2, which plastic holders police officers found in a wastebasket in the basement of defendant's home.

On May 8, 1967, the defendant was arrested in Great Falls, Montana, in connection with another burglary in that city. On May 9, 1967, the Cascade County attorney applied for a search warrant covering the defendant's house and car; however, the warrant was not actually signed by the presiding judge until May 10, 1967.

On the morning of May 10, 1967, an inventory of items taken in the Harry Howard burglary was received by the Great Falls police department. Included in that inventory were two Hawaiian overprint bills, one $20 bill and one $1 bill. Among the items found on the defendant's person upon his arrest May 8th was a $20 Hawaiian overprint bill the serial number of which matched the serial number of the $20 bill on the inventory from the Havre police. It was also later de-

termined that the defendant had sold to a coin dealer in Great Falls a $1 Hawaiian overprint bill, the serial number of which matched the serial number of the $1 bill on the inventory.

Upon the search of the defendant's house and car under the authority of the search warrant issued May 10, 1967, two categories of articles were found that implicated defendant with burglary of the Howard residence: plastic bill holders, as mentioned above, were found in the basement of the defendant's home, and 199 Canadian silver dollars were found in the trunk of the defendant's car. One hundred twenty-one rolls of Canadian silver dollars were taken from the Howard residence.

On August 1, 1967, an Air Force sergeant found certain merchandise in an abandoned car body north of Great Falls. Among the items found were a prescription bottle and a felt bag. The defendant admitted the bottle was his, and a pharmacist testified that Gray had purchased prescriptions with Canadian silver dollars and that the bottle in question had been sold to the defendant. The defendant tried to explain away the presence of the bottle in the merchandise by testifying that he had given one Pat Edwards some of his pills when Edwards was having trouble with his back. The defendant had earlier testified he used the pills for his stomach disorder, but the dispensing pharmacist testified the pills were used to curb one's appetite. Also the felt bag was identified by Mr. Howard as being his and as one taken in the burglary.

On June 24, 1967, Pat Edwards was arrested in Billings, Montana, and was found to have in his possession property later identified as having come from the Howard residence. The defendant admitted knowing Edwards and having had several meetings a week with him. He also admitted that he met Edwards and a man identified as William Hafdahl both in Great Falls and Missoula. The defendant claimed he received Howard property from Hafdahl and upon indications that the property received was stolen he left word with Ed-

wards to have Hafdahl pick up the property. The defendant's justification for not having notified the sheriff of his suspicions that the property was stolen was his fear of trouble because he was at that time on parole.

The defendant's first contention of error is that the evidence seized under authority of the search warrant issued May 10, 1967 should have been suppressed because police officers seized property not specifically described in the warrant. The defendant contends the seizure was in violation of Article III, Seciton 7, of the Montana Constitution and of the Fourth Amendment of the Constitution of the United States. There is no contention by the defendant that the search of the Gray home was unreasonable; nor is there any contention by the defendant that the search warrant issued by the district court was not a valid warrant.

██ ██ The intention of the Fourth Amendment was ''to protect against invasions of 'the sanctity of a man's home and the privacies of life,' Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746, from searches under indiscriminate, general authority.'' Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed2d 782 (1967). Protection of these interests was assured by prohibiting unreasonable searches and seizures. Warden, Md. Penitentiary v. Hayden, supra. Under the circumstances of the case a thorough search of the Gray home was called for in view of the fact that the officers were looking for a number of small items which the warrant authorized a search for, including three rings, five watches, four rolls of Franklin 50-cent pieces and two rolls of 5-cent stamps. The officers were acting reasonably in searching as they did and it is frivolous to contend they were acting unreasonably.

██ The defendant also contends that since the items seized were not described in the warrant, there was an illegal seizure. But '' [T]he premise * * * that government may not seize evidence simply for the purpose of proving crime has like-

wise been discredited.'' Warden, Md. Penitentiary v. Hayden, supra, at 306, 87 S.Ct. at 1649. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42-43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)." Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069-1070 (1968). In view of the fact that the officers were legally in the Gray home and carrying on a lawful search of the premises it would be incredulous for us to hold contrary to the rule clearly established by the United States Supreme Court and suppress the evidence in question. Therefore, we hold in accord with the general rule as enunciated in the Harris case above that the officers did not err in seizing the plastic bill holders in the Gray basement or the Canadian silver dollars from the Gray automobile; nor did the district court err in refusing to suppress such evidence.

Defendant's second contention covers Instruction No. 7 given by the court which stated, in effect, that mere unexplained possession of stolen property, howsoever soon after the taking, is not sufficient to justify conviction but it was a circumstance to be considered in connection with other evidence in determining guilt or innocence. However the instruction also stated that there must be corroborating circumstances which of themselves tend to establish guilt. Finally the instruction stated that one found in possession of property that may have been stolen must explain such possession in order to remove the effect of that fact as a circumstance to be considered with other evidence pointing to guilt.

The defendant contends this instruction deprived him of the presumption of innocence that he was entitled to under Montana law, (section 94-7203, R.C.M. 1947; Montana Con-

stitution, Art. III, Section 16), and also deprived him of his right to remain silent as guaranteed by section 94-8803, R.C.M. 1947.

■ ■ We can find no error with the instruction in question. The instruction clearly stated that mere possession alone is not sufficient to justify a conviction; such has been the long standing rule in Montana. Territory v. Doyle, 7 Mont. 245, 250, 14 P. 671 (1887); State v. Sullivan, 9 Mont. 174, 176, 22 P. 1088 (1890); State v. Sparks, 40 Mont. 82, 105 P. 87 (1909). Nor can there be any question that possession is a circumstance to be considered in connection with other circumstances in determining guilt. People v. Johnson, 99 Cal. App.2d 717, 222 P.2d 335 (1950).

The defendant relies heavily on State v. Greeno, 135 Mont. 580, 342 P.2d 1052 (1959) which was decided 3-2, for the proposition that the last paragraph of Instruction No. 7 was erroneous because it was a violation of his right to remain silent. That paragraph read in part:

"One who is found in the possession of property that may have been stolen from burglarized premises, is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with other evidence, pointing to his guilt * * *."

State v. Greeno was reversed by this Court on one ground, namely, because confusing and perjured testimony by a witness prevented a fair trial for the defendant, which testimony the witness later recanted. Although Mr. Justice Bottomly condemned the use of an instruction similar to the one in question here, particularly the portion quoted just above, only one other justice concurred in his condemnation. The second concurring justice, Hon. Lester H. Loble, sitting in place of Mr. Chief Justice Harrison, stated that he concurred "* * * in the result indicated *solely* upon the ground that * * * Mr. Justice BOTTOMLY, in his decision, correctly stated that a new trial should be granted the defendant and appellant by

152

resason of the facts and circumstances shown by the record, relating to the recantation of the testimony of the witness Armstrong * * *.'' Petition for Rehearing, State v. Greeno, supra, at 594, 342 P.2d at 1059.

We are aware that there are cases, notably in Colorado and in some federal district courts, holding that instructions similar to the one under attack here are erroneous and prejudicial. However, we think the better reasoned cases hold that such instructions are not erroneous or prejudicial. In a very recent case, Arizona v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967) cert. denied 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142, the lower court instructed the jury:

''The burden is on who is found in the possession of property that was stolen from burglarized premises to explain such possession in order to remove the effect of that fact as a circumstance to be considered with all other evidence pointing to his guilt.''

The Arizona Supreme Court found no error in the instruction and went on to say at page 818 of 424 P.2d:

''As we read the subject instruction, it appears to state the law correctly for in effect the instruction says that if defendants had wished to remove the effect of possession of stolen goods from the facts and circumstances to be considered by the jury, defendants should have offered some explanation of their possession of such goods.''

We agree. In effect all the instruction in question here says is that if defendant wanted to prevent the jury from considering possession as a circumstance indicating guilt, then he should , by testifying himself, by having another testify, or by introducing real evidence, explain his possession. The rule equally applies to all evidence which a defendant would remove as a circumstance pointing to his guilt; that is, he must by some means explain away such evidence.

The defendant's third contention is that the court erred in admitting certain exhibits, items identified by Mr. Howard

as having been stolen from his home and which were found in the possession of Pat Edwards when he was arrested in Billings.

The connection between the defendant and Pat Edwards is clear. The defendant testified he knew Edwards and that he asked Edwards to have one William Hafdahl pick up certain property that Hafdahl left with the defendant and which defendant believed was stolen. The vital question is whether the evidence complained of possessed any probative value and whether it tended even remotely to establish a conspiracy. Devoe v. United States, 103 F.2d 584, 588 (8 Cir. 1939). We think there was probative value and that it tended to establish a conspiracy. Therefore we can see no abuse of discretion in the trial court in admitting the exhibits in question.

The defendant as his fourth contention claims, without citing any authority, that he is entitled to a new trial because the trial court refused to instruct the jury on petit larceny. Keeping in mind that over $32,000 worth of property was missing from Mr. Howard's home; that Howard property (two Hawaiian overprint bills valued in excess of $50) was connected directly with the defendant; that 199 Canadian silver dollars were found in defendant's possession; it is indeed difficult to see how the trial court abused its discretion by failing to instruct on petit larceny. "The submission of a lower offense is justified only when the evidence on some basis would support a finding that the defendant is innocent of the higher offense and guilty of the lower." State v. Musgrove, 2 Ariz. App. 505, 410 P.2d 127, rehearing denied 3 Ariz.App. 155, 412 P.2d 724, certiorari denied, 385 U.S. 979, 87 S.Ct. 524, 17 L.Ed.2d 441 (1966). Here there was no evidence that would support a finding that defendant was innocent of the higher offense and guilty of the lower. Therefore, there was no error in refusing the defendant's proposed instruction.

His fifth contention deals with this situation:

154

On cross-examination the defendant was asked why he failed to report to the police his suspicion that the property Hafdahl delivered to him was stolen. He replied:

"A. I was afraid to, I try to stay away from the law, I am on parole and for me to walk into the police station with something like that, or to the Sheriff's Office, what am I going to say?

"Q. You were on parole, but you are not now? A. No, I am violated.

"Q. You are back in prison? A. Yes, sir."

The defendant now contends that allowing such cross-examination was contrary to Montana law and prejudicial. It is true that this Court held in State v. Coloff, 125 Mont. 31, 231 P.2d 343 (1951) that "* * * it has long been the uniform trial practice in Montana to ask the witness, on cross-examination, in substance, 'Have you ever been convicted of a felony?' If the answer is 'Yes,' further examination along this line is foreclosed." That practice was also made applicable to cross-examination of a defendant. See State v. Quinlan, 126 Mont. 52, 56, 244 P.2d 1058 (1952).

The cross-examination by the county attorney was clearly to elicit information pertaining to defendant's knowing possession of what he thought was stolen property. There has been no showing that the county attorney in any way intended to degrade or prejudice the defendant. In fact whatever prejudice that might have occurred to the defendant came from the lips of the defendant himself. State v. Tully, 148 Mont. 166, 170, 418 P.2d 549 (1966). We can see no prejudice so far as the state's actions are concerned.

The defendant's sixth contention is that it was error for the trial court to deny him discovery of the plastic bill holders, 199 Canadian silver dollars and all other items of evidence obtained by persons who investigated the offenses charged. Recently this Court in State v. Schenk, 151 Mont. 493, 444 P.2d 861 (1968), set out the law of discovery in a criminal

case in Montana as it existed prior to the adoption of the new rules of criminal procedure on January 1, 1968. What we said there applies equally here and we will not burden this record with another recital of what we said there.

It is well to note, however, that in both cases the defendant cites in support of his contention that discovery should have been allowed, the real question involved was not discovery, but suppression by the prosecution of evidence favorable to the accused. There is no indication or even contention in defendant's brief that there has been any suppression of favorable evidence here.

For his seventh contention defendant, without citing authority, claims that there was no evidence placing him at the scene of the crime, Havre, Montana, and that, therefore, there was not sufficient evidence to support his conviction. Appellant's problem stems from the fact he has forgotten that burglary and larceny are separate and distinct crimes. The elements of each require separate proof by the prosecution and separate consideration by the jury.

Section 94-204, R.C.M. 1947, defines principals, as well as aiding and abetting, and advising and encouraging. Instruction No. 14 substantially follows the wording of the statute. Under section 94-204 the defendant would not have to be present at the scene of the crime to be guilty of larceny. The remaining question is whether there was sufficient evidence to allow the jury to find a conspiracy.

The transcript is replete with evidence and testimony connecting the defendant with Pat Edwards who was found in possession of Howard property, and also with William Hafdahl, who, the defendant contended, delivered stolen Howard property to the defendant. The defendant also admitted selling the $1 Hawaiian overprint bill knowing, or at least suspecting, it to be stolen. In addition, there were the plastic bill holders found in the defendant's basement as well as one of his prescription bottles found with stolen Howard property

in the abandoned car body north of Great Falls. The overwhelming conclusion gained from a reading of the district court record is that the defendant was at least an accomplice in the Howard burglary, and we can find no merit in his contention that there was insufficient evidence to sustain a conviction for larceny.

In defendant's eighth specification he contends that an acquittal on Count I, Burglary, acted as a bar to a conviction on Count II, Grand Larceny. He contends that an acquittal on the burglary charge bars conviction on the larceny charge because the intend to commit larceny is an element of both. The defendant reasons that since the jury by finding him not guilty of burglary and so not guilty of intent to commit larceny could not then find him guilty of larceny. This is an interesting theory, but we cannot agree with defendant.

Testimony concerning the larceny fills the transcript; but testimony designed to prove the burglary and to connect the defendant with that charge is scarce. It is not difficult to discern from the transcript how the jury might have found the evidence of burglary insufficient to support a belief beyond a reasonable doubt of guilt of burglary. The jury was instructed to consider the two charges separately. The conviction for larceny indicates they found the requisite criminal intent independent of their considerations concerning the ,elements of burglary. The one case cited by defendant, State v. Holt, 121 Mont. 459, 194 P.2d 651 (1948), is not applicable to the fact situation we have here. In the Holt case the defendants were charged and convicted under one statute but then punished under another. Here the defendant was charged with and convicted of larceny, both under the same statute.

In his ninth and last specification the defendant contends he was denied a fair trial by the court's advising the jury that he had previously been convicted of a felony. The defendant admits that he is aware this Court has previously held that such procedure does not deny the accused

a fair trial (Petition of Jones, 144 Mont. 13, 393 P.2d 780 (1964) but also contends that we should now review this holding. He bases his contention on the fact that the new Montana Code of Criminal Procedure, specifically section 95-1506, precludes making known to the jury any prior conviction. The new code became effective January 1, 1968, but the defendant wants this Court to ignore the express intent of the Legislature and make the new code retroactive to the date of his trial. It takes no Solomon to see that such a procedure would open a Pandora's box and that this Court would be flooded by appellants seeking to push the effective date further and further back in order to bring their case under the new rules. We will have no part in such a scheme.

Throughout this case this Court has been confronted with a host of novel contentions; however, novelty is not enough to support a reversal. Finding no error in the record we hold that the judgment be affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON concur.