STATE OF MONTANA, Plaintiff and Respondent, v. CHARLES A. GRAY, Defendant and Appellant.

No. 11472.
Submitted November 21, 1968. Decided December 19, 1968.
448 P.2d 744.

Dirk Larsen and Dale Forbe (argued), Great Falls, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, Gene B. Daly, County Atty., Great Falls, Michael T. Greely, Asst. Atty. Gen. (argued), Helena, Robert Gillan, Deputy Atty. Gen. (argued), Great Falls, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is from a conviction and judgment and denial of a motion for a new trial. The defendant is serving a 25 year sentence in the state prison having been found guilty of the crime of first degree burglary together with a prior conviction.

Some men go into the wrong occupation—such a man is Charles A. Gray for it would appear from the fact situation of two closely connected criminal prosecutions that the fickle finger of fate pointed directly at the defendant, Gray.

About 11:20 p.m. on the evening of April 14, 1967, Mrs. Rudolph Carney returned to her home in Great Falls, Montana and rudely interrupted the burglarizing of her home. Upon entering her home she observed the disarray in various rooms and sensing that someone was still in the house she called out, immediately thereafter she saw the head of a man appear from behind a bedroom door some 15 feet down a lighted hall. Upon seeing the man she instantly turned and fled from the house to a neighbor's home across the street and from there called the police department. She gave the police a description of the individual whose head she saw, as follows: "Looked like he had a sweater on, kind of a tan sweater, kind of bushy-haired, black hair". At the time of the trial, some 9 months later, she stated when asked to identify the defendant as follows: "I believe that is the man". Later on cross-examination and on redirect she could only say she believed the accused was the same man—she never made a positive identification.

When the police arrived to investigate the burglary they found a thermopane window in the bedroom had been broken to gain entrance and, unfortunately for the defendant, just below the window sill on the rug was a piece of glass with a good latent thumb print on it. This thumb print was properly processed and introduced at the trial via the testimony of an F.B.I. agent and the chief of the identification bureau of the Great Falls police department both testifying that the thumb print was that of defendant.

Several months later, on July 31, an airman stationed at Malmstrom Air Force Base located at Great Falls, went hunting rabbits north of Great Falls and found much of the loot taken from the Carney home. In describing the incident he testified: "I saw this rabbit about thirty or thirty-five feet and I fired at it three times and the fool rabbit didn't know he was dead, he bounced into this automobile, abandoned car. * * * And in my probing in this abandoned car I saw this box of merchandise which I think contained a box of assorted jewelry and watch bands, etc." Upon returning to Great Falls he turned the discovery over to the sheriff's office and at the trial described it as containing the following: "Two boxes of watch bands, speidel crush-proof type jobs, 146 of them, some old heirloom type jewelry, bracelet, earrings, gold rings, some very old wedding and engagement rings, some coins, and a little prescription container, one of these little round deals * * *".

The deputy sheriff who received the items had the Carneys come to the sheriff's office where Mrs. Carney identified the jewelry as belonging to her. The prescription bottle which was recovered had the defendant's name on it, the prescription number, the name of the pharmacy issuing the prescription and the doctor's name who prescribed the prescription. At the trial this damaging piece of evidence was introduced and all the people involved, from the doctor to the defendant, were carefully tied together.

The defendant and his wife testified that on the night of the burglary they were together from shortly after 6:00 p.m. until after 2:00 a.m., doing the town; that the only time they were apart was for about a half hour around 11:00 p.m. when due to some disagreement he got out of the car. This testimony tied into an alibi witness' testimony that will be discussed later in this opinion. Mrs. Gray's testimony was very detailed as to the time and events and on cross-examination when she was asked how she could be so specific she answered that she had taken a memory course—but when asked when she had taken it she was not so specific, replying: "Two years ago, something like that".

The jury, after a carefully tried case, chose not to believe the defendant's explanation of how so many damaging facts pointed in his direction.

The defendant sets forth the following issues for consideration.

1. The dismissal of the original information and filing of a new information merely added a prior and did not change the basic charge. It was, in fact, an amendment of substance and improper under section 94-6207, R.C.M.1947.

2. The testimony of Tony Trocchia should have been considered by the jury as it was the only independent support for defendant's alibi.

3. The pre-trial confrontation of the defendant by the complaining witness did not meet the requirements set forth by the Supreme Court of the United States in regard to the sixth amendment—right to counsel.

4. The court appointed attorney for defendant failed to provide adequate assistance of counsel in the following regards:

A. Failure to object to obvious hearsay regarding fingerprint investigation.

B. Failure to have Trocchia available to testify.

C. Failure to object to eye-witness' identification at the time of trial.

D. Failure to refer the district court to the latest decision of the Montana Supreme Court regarding amendments to information.

E. Failure to object to reference to a prior felony.

5. That the verdict was not supported by the evidence.

As to issue No. 1, we recall that the burglary took place on April 14, 1967. It was several months later, July 31, when the airman found some of the items missing from the Carney home. In the interim, a number of things had occurred.

On May 8, 1967 a bench warrant issued for the arrest of the defendant after the district judge granted a motion for leave to file an information charging burglary. At that time, the thumb print on the thermopane glass had been identified as that of the defendant. A search warrant was issued on May 10 based upon an application dated May 9. For other details see State v. Gray, 152 Mont. 145, 447 P.2d 475 (1968), in which the same defendant was involved. The search turned up items taken in a burglary in Hill County. This Court of its own motion has ordered up the file in district court cause No. 5624C, entitled State v. Gray. This file is the same case but under a different number from district court cause No. 5705C. Apparently present counsel for defendant was not aware of its contents.

Upon defendant's arrest, bail in the amount of $10,000 was required but was reduced to $5,000 on May 11. Defendant was represented by his own counsel, LaRue Smith. On May 25, LaRue Smith moved for appointment of counsel for defendant based upon defendant's affidavit that he was without funds. In the affidavit it appears that defendant called his counsel immediately upon arrest. Counsel, Dirk Larsen, was appointed on May 29, 1968.

At that time, trial had been set in Cascade County for the then current jury term. By stipulation of counsel the setting was vacated.

Subsequently, bail was again reduced—from $5,000 to $2,500

on July 26, 1967. Bail was posted on July 27, 1967. Meantime, as related above, the airman discovered the missing items.

Defendant was arrested on a Hill County warrant and was taken to Havre on August 3. In Havre another defense counsel was appointed. In Cascade County, on August 14, 1967 the matter was set for trial on September 11, 1967. An affidavit and motion of defendant was filed on September 5 requesting a continuance so that the Hill County case could be tried first. The trial setting was again vacated. On September 6, 1967, defendant again posted bail and was subsequently returned to Great Falls where a parole violation hearing was held; he was returned to the state prison on November 20, 1967.

In the interim, between September 6, 1967 and his return to prison, defendant was arrested in Lewistown, Montana on September 15 on a driving charge. On October 17, 1967, defendant was arrested in Missoula on a burglary charge and released on bail. During this period he was also arrested in Pasco, Washington.

All of the foregoing recitation reveals a very active defendant, represented by at least three counsel. Defendant is also revealed to be a former police officer.

It was against the foregoing recital of events that present counsel suggests incompetence of trial counsel. We find no merit to this contention and shall not dwell on it further. Present counsel is obviously not familiar with much that has gone before.

But, returning now to issue No. 1, the defendant did not enter a plea to the May 8, 1967 information and upon his return to Cascade County to face this charge in January, 1968 the county attorney moved to dismiss the May 8 information and file a new one which in addition to the first degree burglary charge also set forth a prior conviction in the year 1964. Objection was made to the filing of the new information dated January 17, 1968, and the trial judge heard arguments on the objections raised by counsel for defendant. It

is to his ruling allowing the filing of the new information that defendant takes issue.

In his argument before the trial court and in his brief in this Court the defendant relies upon several recent holdings of this Court. State v. Knight, 143 Mont. 27, 387 P.2d 22 (1963); Gransberry v. State, 149 Mont. 158, 423 P.2d 853 (1967); State v. Fisher, 79 Mont. 46, 254 P. 872 (1927).

The state does not agree with the defendant's position that the second information adding the prior felonies cannot be filed, but takes the position that its amendment, even though it is a matter of substance, is allowed by section 94-6207, R.C.M.1947, relying on our holding in Gransberry v. State, supra. However, we noted in Gransberry that "There was no objection entered to the information at the trial, nor did the petitioner raise this question in his appeal". That is not the situation here where trial counsel raised the issue and was the entire issue argued to the trial judge. We find no merit in issue No. 1.

Issue No. 2 concerns the trial court's refusal to grant a new trial on the grounds of newly discovered evidence. At the time of the trial January 18, 1968, two subpoenas had been issued for one Tony Trocchia, a bartender at Duffy's Tavern, but he was not served though both counsel for defendant and defendant's wife stated they tried to find him to testify at the trial and failed. Approximately a month later, at the time of the motion for a new trial, the witness appeared and was allowed to testify. A summary of his testimony showed that he knew the defendant; that he was in Great Falls during the month of April 1967; that he received a telephone message from the defendant telling him he was stranded on the west side of the city at a place called The Barrel and that he went over and picked him up; that it was dark when he picked him up; and, that he returned him to Duffy's where he reunited defendant with his wife. When queried as to whether it was on the night of April 14, 1967 he replied:

"Could have been any day". In considering this evidence the trial judge noted in his motion denying the new trial: "Now, we have Mr. Trocchia's testimony here which really doesn't confirm the alibi in the sense that he does not recall if this was the particular night in question or not. As I say, there was no motion made for a continuance and I think that in order that we be able to carry criminal litigation or any other kind of litigation to a successful conclusion, that there must be time made for a particular thing to occur. If I felt here in my own mind that a miscarriage of justice had occurred, I would grant a new trial. I do not feel that did occur, I feel Mr. Gray had a fair trial, I feel that the jury verdict was a fair verdict and I'm going to deny the handwritten motion for new trial." We agree and find no error. In State v. Greno, 135 Mont. 580, 342 P.2d 1052 (1959), this Court set forth the necessary conditions for granting a new trial in a criminal case based on the grounds of newly discovered evidence. The instant case fails to meet any of the grounds set forth in that case.

Issue No. 3 relates to the pre-trial conforntation of the defendant and the principal witness, Mrs. Carney. This matter also came before the trial judge at the time of the motion for a new trial, due to the fact it was unknown at the time of the trial. It developed at the hearing, through the testimony of Mrs. Carney, that either at the time of the trial, or just before, the Carneys were requested to go to the county jail by a police officer; they were told they were going to bring the accused into another room where Mrs. Carney could look at him. At the time she saw him there were other people in the room whom she presumed were sheriff's deputies. She testified on direct, cross-examination, and to questions asked by the trial judge that she did not identify the accused at that time but said he could be the man, that he had dark hair, but she could not make a positive identification, nor did this chance to view the accused in any way affect her testimony at the trial.

318

Defendant's counsel at the conclusion of the hearing, in argument to the court, argued that such a line-up requires that the accused's counsel be present, citing recent rulings of the United States Supreme Court. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The question is whether this pre-trial observation of the defendant so tainted the in-court identification as to deny him his right to a fair trial.

We find in this case that this pre-trial observation did not. In both Wade and Gilbert, supra, the defendants were positively identified in court after the pre-trial lineup. Here, Mrs. Carney never positively identified the defendant as the man in her house on the night of the burglary. To the contrary after viewing the accused she continued to say that while she believed him to be the man she was not sure.

The trial judge had an inquiry, questioned the witness, and was made aware of the United States Supreme Court cases covering the question. He determined that the trial of the case was fair. In United States v. Wade, supra, the Supreme Court said that the question of inquiry to determine if the in-court identification had independent origin is most properly made by the district court. Here the district court made such inquiry and we find no error in his ruling.

Issue No. 4 we have earlier in this opinion discussed in detail and we find it without merit.

Finally, defendant asserts that the verdict was not supported by the evidence. It seems so very clear, as we remarked in the opening of this opinion, that the fickle finger of fate pointed directly at defendant. The evidence was overwhelming.

Finding no error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and CASTLES, concur.