No. 14704

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIAM NEWTON ROSE,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
Honorable  Jack L. Green, Judge presiding.
Missoula County.

Counsel of Record:

For Appellant:

Hirst, Dostal and Withrow, Missoula, Montana
John Dostal argued, Missoula, Montana
Michael J. Sherwood, Missoula, Montana

For Respondent:

Honorable Mike Greely, Attorney General, Helena,
Montana
Chris Tweeten argued, Assistant Attorney General,
Helena, Montana
Robert L. Deschamps III, County Attorney, Missoula,
Montana
Karen Townsend, Deputy County Attorney argued and
Tom Beers, Deputy County Attorney argued, Missoula,
Montana

Submitted:    March 24 , 1980

Decided: APR 2 - 1980

Filed:

Thomas J. Kearney
_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from a denial of his motion for a new trial following his conviction of burglary by a jury in the District Court of Missoula County.

Dr. John Opalka was on vacation in March 1978. A neighbor, Rae Dabbert, had been asked to watch the Opalka home, to water plants and pick up mail. On March 2, 1978, she was in the home and all was in order. On Sunday, March 5, Mrs. Dabbert noticed that a door into the garage was open and that a number of rooms were in disarray. She called the Missoula County sheriff's office and Deputy Willis Hintz arrived shortly thereafter.

Mrs. Dabbert and Officer Hintz searched the house and discovered that a television set was missing and that there were some tools on a couch. They also saw tracks in the snow behind the house. They could not tell whether the tracks had been made by one or by two people. Officer Hintz found pry marks on a door leading into the living room and on the garage door.

Dr. Opalka and his wife returned to Missoula on Monday, March 6, 1978. Later that day Dr. Opalka spoke with Deputy Phil Nobis who was investigating the crime. A list of the missing property was prepared at that time. Dr. Opalka indicated that six guns were taken, two containers of coins with approximately $400 in each, a portable typewriter, a portable television and other miscellaneous items.

On February 27 or 28, the defendant had been at Dr. Opalka's clinic demanding a cash refund for some returned pills. The receptionist informed the defendant at that time that she could not refund the money until the doctor returned and that the doctor would not be back for a week. The defendant had left the clinic extremely upset.

In the early morning hours of March 5, 1978, a University

of Montana security officer ticketed an illegally parked vehicle belonging to Richard Cory. The officer observed in the back seat of the car a portable typewriter and a 5 gallon green jar with coins in it. On Friday, March 10, Missoula police learned that these items had been seen in Cory's car. It was also learned that Cory and the defendant were associates and that the defendant had recently had some guns in his possession. The police found Cory and a voluntary statement was taken. In this statement Cory told the police that the defendant had been angry at Dr. Opalka because he could not get a refund on some pills and defendant had decided to "rip off" the doctor. Cory stated that the defendant had committed the burglary on his own and had taken some guns to the residence of Jane Gardiner. Cory denied any participation in the Opalka burglary.

After taking this statement police officers went to the Gardiner residence. Stan Gardiner was present and he voluntarily turned over four guns to the officers. A short time later his ex-wife Jane Gardiner returned to the residence. Two additional guns were recovered from her car. A receipt was prepared for the guns and they were returned to Dr. Opalka the next morning.

Early in the morning on March 11, 1978, the defendant was arrested in Darby, Montana, in a car belonging to Madeline Freeburg. The defendant was charged with burglary, or in the alternative, theft of the six guns. He pleaded not guilty and interposed a defense of alibi. Madeline Freeburg was listed as his alibi witness.

By the time of the trial Cory had changed his original version of the burglary. He testified that he and the defendant had committed the burglary together. In this testimony he outlined the details of the burglary. He stated that after the crime was committed the defendant had gone to Butte to try to sell the guns. Cory also testified that he and the defendant went to Polson

the next Tuesday in an attempt to sell two guns. They had no success in their attempts at selling the guns. The prosecution introduced the testimony of several witnesses which tended to link Cory and the defendant together on the night the crime was committed.

The defendant testified on his own behalf at the trial. He testified that he had nothing to do with the burglary. He stated that he did tell Cory about the visit to the Opalka Clinic, but that the idea of burglarizing the Opalka residence was Cory's. The defendant stated that he had not seen Cory on the night of the burglary, but that he did drive to Polson with Cory in an attempt to sell the guns. He testified that he did not know at that time that the guns had been stolen. A few days later, according to the defendant, he loaned his landlady's car to Cory for two or three hours in the morning. In the afternoon, after he had gotten the car back, the defendant received a phone call from Cory. Cory told the defendant that he (Cory) had left something in the car trunk and for the defendant to "Get that out of there." As a result, the defendant drove to Lolo, Montana, and stashed the guns in a pasture. The defendant and Cory later recovered the guns.

Madeline Freeburg, who was the defendant's landlady, testified that defendant had been home studying all night on March 4, 1978, the night of the burglary. Shirley Marshall, an acquaintance of defendant's, stated that the defendant had been at her home on the evening of March 4, and that he had left at about 11:00 p.m. The defendant testified that he had been with Shirley Marshall that evening and that he had gone home at about midnight. He denied being with Cory that night and he denied being at any bars that night.

Craig Howard testified as a rebuttal witness for the State. Howard testified that the defendant had been in a Missoula bar

at 10:30 or 11:00 p.m. on March 4, 1978.

The case was submitted to the jury on the alternative charges of theft and burglary. The jury was instructed that they could only find the defendant guilty of one of the two charges. The jury returned a verdict of guilty to the burglary count. The defendant filed a motion for a new trial which was denied. The defendant was sentenced to the State Prison for a period of 25 years. The District Court ordered that the defendant be declared ineligible for parole or furlough during the term of the sentence.

The following issues are raised on appeal:

1. Was there sufficient corroboration of the accomplice's testimony?

2. Was the motion for a new trial properly denied?

3. Was Instruction No. 20 properly given to the jury?

4. Did the defendant have effective assistance of counsel?

Under Montana law a defendant cannot be convicted of a crime solely upon the testimony of an accomplice. Section 46-16-213, MCA, provides:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In the instant case the prosecution was largely based upon the testimony of Richard Cory, an admitted accomplice to the burglary. The defendant claims that, absent the testimony of Cory, there is not sufficient, independent evidence which "tends to connect" him with the burglary.

The reason for the rule on corroboration is firmly grounded in common-experience. "The testimony of an accomplice is apt to be highly colored and biased. Moreover, it is to be expected that

- 5 -

an accomplice may, or has good reason to, place his own welfare and freedom above that of the defendant." 2 Wharton's Criminal Evidence §445 (12th ed. 1955).

This Court has recently outlined the law of corroboration of accomplices as follows:

> "The sufficiency of evidence necessary to corroborate accomplice testimony is a question of law. State v. Standley (1978),____Mont.____, 586 P.2d 1075, 1078, 35 St.Rep. 1631, 1635; State v. Perry (1973), 161 Mont. 155, 161, 505 P.2d 113, 117. In defining the quantum and character of proof required to corroborate accomplice testimony, a substantial body of case law has evolved.

> "To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. State v. Keckonen (1938), 107 Mont. 253, 263, 84 P.2d 341, 345. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. State v. Gangner (1957), 130 Mont. 533, 535, 305 P.2d 338, 339. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him. State v. Ritz (1922), 65 Mont. 180, 186, 211 P. 298, 300; State v. Stevenson (1902), 26 Mont. 332, 334, 67 P. 1001, 1002. Corroborating evidence may be circumstantial (State v. Harmon (1959), 135 Mont. 227, 233, 340 P.2d 128, 131) and can come from the defendant or his witnesses. State v. Phillips (1953), 127 Mont. 381, 387, 264 P.2d 1009, 1012.

> "With these principles in mind, each case must be examined on its particular facts to determine if the evidence tends, in and of itself, to prove defendant's connection with the crime charged.

> "One accomplice cannot supply the independent evidence necessary to corroborate another accomplice. State v. Bolton (1922), 65 Mont. 74, 88, 212 P. 504, 509; 30 Am.Jur.2d Evidence, Sec. 1156 . . ." State v. Kemp (1979),____Mont.____, 597 P.2d 96, 99, 36 St.Rep. 1215, 1217-1218.

In the present case the only independent evidence which tends to connect the defendant with the burglary is his possession of the stolen guns. The defendant was in possession of the guns on at least two occasions by his own admission. He and Cory had the guns when they drove to Polson and the defendant had sole possession when he stashed the guns in the pasture near Lolo. The defendant contends that this tends to connect him with theft (of

which he was acquitted) but not burglary, because burglary re-
quires an unlawful entering of an occupied structure. Section
45-6-204(1), MCA. We disagree.

"It may be shown, by way of corroboration . . . that
the defendant was in possession of the stolen property involved
in the crime charged . . ." 3 Wharton's Criminal Evidence §649
(13th ed. 1972). This rule extends to the crime of burglary.
"In prosecutions for larceny, robbery, and burglary, an accom-
plice may be corroborated by proof of the possession of the
stolen property by the defendant charged with the crime." 2
Wharton's Criminal Evidence §467 (12th ed. 1955). In the recent
case of State v. Williams (1979), ____Mont.____, 604 P.2d 1224,
1230, 36 St.Rep. 2328, 2336, we held that constructive possession
of a stolen pistol sufficiently corroborated the testimony of an
accomplice where the defendant was convicted of conspiracy to
commit a burglary.

In the present case the defendant attempted to explain
away his possession of the stolen guns. In the similar case of
People v. Hughey (1926), 7? Cal.App. 541, 250 P. 406, the defen-
dant had been convicted of conspiracy to commit robbery. On appeal
he alleged that there was not sufficient corroborating evidence
to support the testimony of two accomplices. The Court noted
that the defendant's unexplained possession of items taken in the
burglary was a circumstance tending to show guilt. As to the
defendant's explanation of his possession of these items, the Court
said:

> "In the instant case appellant attempted to ex-
> plain his possession of the stolen pin. This
> testimony, however, the jury was not bound to
> believe, and if disbelieved, the fact of such
> possession tended strongly and was sufficient
> to corroborate the testimony of the accomplices
> mentioned." 250 P. at 407.

We agree with this reasoning. Defendant's possession of
the stolen guns was sufficient as a matter of law to corroborate

Cory's testimony. Whether the defendant's explanation was sufficient to explain away the possession was a factual question for the jury.

In State v. Broell (1930), 87 Mont. 284, 286 P. 1108, the defendant contended that his possession of stolen property did not sufficiently corroborate an accomplice's testimony in a larceny case. The defendant attempted to explain away the possession. This Court held that the possession tended to connect the defendant with the larceny. We said, "Whether the explanations were sufficiently satisfactory to raise a reasonable doubt in the minds of the jurors as to defendant's connection with the offense charged was a question for the jury's determination . . ." 87 Mont. at 292.

For cases from other jurisdictions which have held that possession of stolen property sufficiently corroborates an accomplice's testimony see: State v. Brown (1973), 13 Or.App. 269, 508 P.2d 234; Turci v. State (Okla.Crim. 1971), 482 P.2d 611; and State v. Oliver (1969), 9 Ariz.App. 364, 452 P.2d 529. We hold that there was sufficient corroborative evidence to support the testimony of Cory.

The defendant next alleges that his motion for a new trial was improperly denied. At a hearing on the matter held in District Court the defense presented the testimony of Robert Conn and Maynard Owns Medicine. Conn testified that he had seen Cory in Cory's room at 10:30 a.m. on Sunday, March 5. Conn had gone there to collect some money that Cory owed him. Cory said that he did not have the money, but that he had a TV set, several guns and some coins. Cory finally paid Conn $50 with quarters and fifty-cent pieces. Maynard Owns Medicine testified that he was with Cory in a Missoula bar on March 4. Cory asked him if he knew where he could get rid of some guns. Later that same day, Owns Medicine saw several rifles and shotguns in the trunk of Cory's car.

The testimony of these two men was impeached to a large degree. Conn had written a letter to his parole officer stating that he had not been in Montana from January until March 31. Also, during this hearing Officer Weaver testified that he had questioned Maynard Owns Medicine concerning the Opalka's burglary. At the time of the questioning Maynard said nothing to Weaver about the guns in the trunk of Cory's car. At the end of the hearing the judge said:

> "No, I think as you say, the Court has been lied to today. No further memorandums are required. The Motion for a new trial is denied."

Sections 46-16-702(1), MCA, provides that a court may grant the defendant a new trial if required in the interest of justice. The language clearly indicates that the granting of a new trial is within the sound discretion of the District Court judge. Montana case law is to the same effect. State v. Collett (1946), 118 Mont. 473, 481, 167 P.2d 584, 588; State v. Greeno (1959), 135 Mont. 580, 585, 342 P.2d 1052, 1055. This Court noted in State v. Briner (1977), 173 Mont. 185, 193, 567 P.2d 35, 39, that the trial judge is " . . . in the best position to weigh the merits . . ." of the evidence which is presented to support an application for a new trial. In the present case the trial judge felt that he had been lied to at the hearing on the matter. This Court should not try to second-guess the trial judge in this regard. Because it does not appear that the trial judge abused his discretion, there was no error committed in denying the application for a new trial.

The defendant next contends that the giving of instruction No. 20 was error. This instruction provides:

> "You are instructed that one who is found in the possession of property that was stolen from burglarized premises is bound to explain such possession in order to remove the effect of that fact as a circumstance to be considered with all other evidence pointing to his guilt."

Section 45-6-304, MCA, provides:

"Possession of stolen property shall not constitute proof of the commission of the offense of theft. Such fact shall place a burden on the possessor to remove the effect of such fact as a circumstance to be considered with all other evidence pointing to his guilt."

The defendant argues that without the cautionary preface the instruction would allow the jury to convict him of burglary upon proof that he possessed the stolen property. A similar instruction was given in State v. Greeno (1959), 135 Mont. 580, 590, 342 P.2d 1052, 1057. The instruction in Greeno was declared by this Court to be error because it deprived the defendant of his assumption of innocence. The instruction stated, in part, that:

" . . . if he [the defendant] gives a false account of how he acquired that possession or, having reasonable opportunity to show that his possession was honestly acquired he refuses or fails to do so, such conduct is a circumstance that tends to show his guilt."

The instruction from Greeno was clearly different than the one in the present case. The Greeno instruction told the jury that a failure of the defendant to testify would tend to show his guilt. Instruction No. 20, in the present case, merely allows the jury to consider the defendant's possession of the stolen goods as one factor indicating the defendant's guilt. In State v. Gray (1968), 152 Mont. 145, 447 P.2d 475, this Court again considered a similar instruction and made the following observations:

" . . . we think the better reasoned cases hold that such instructions are not erroneous or prejudicial. In a very recent case, Arizona v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967) cert.denied 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142, the lower court instructed the jury:

"'The burden is on who is found in the possession of property that was stolen from burglarized premises to explain such possession in order to remove the effect of that fact as a circumstance to be considered with all other evidence pointing to his guilt.'

"The Arizona Supreme Court found no error in the instruction and went on to say at page 818 of 424 P.2d:

- 10 -

"'As we read the subject instruction, it appears to state the law correctly for in effect the instruction says that if defendants had wished to remove the effect of possession of stolen goods from the facts and circumstances to be considered by the jury, defendants should have offered some explanation of their possession of such goods.'

"We agree. In effect all the instruction in question here says is that if defendant wanted to prevent the jury from considering possession as a circumstance indicating guilt, then he should, by testifying himself, by having another testify, or by introducing real evidence, explain his possession. The rule equally applies to all evidence which a defendant would remove as a circumstance pointing to his guilt; that is, he must by some means explain away such evidence." 152 Mont. at 152, 447 P.2d at 478-79.

The same reasoning applies in the instant case. The instruction told the jury that possession of the stolen property was merely one item that they could consider in determining whether the defendant committed the crime. This is true of any evidence presented during the trial. The defendant is not obligated to explain away this circumstance, but if he wishes to do so, the opportunity is there. This was an opportunity which the defendant elected to accept in this case. As such, the instruction was not error.

Finally, the defendant alleges that he was denied effective assistance of counsel.

The right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and by Article II, section 24 of the Montana Constitution. This Court has said that these constitutional provisions guarantee _effective_ assistance of counsel. State v. Bubnash (1961), 139 Mont. 517, 366 P.2d 155.

In State v. McElveen (1975), 168 Mont. 500, 544 P.2d 820, this Court set aside a conviction because the defendant had been denied effective assistance of counsel. The defendant's trial attorney had done little or no investigation or preparation prior to trial. During the trial only two objections were made by the defense and one of these had been made by the defendant himself.

In the McElveen case the Court used the "farce and sham test" to determine whether the defendant had been denied effective assistance of counsel. See State v. Lopez (1980), ___Mont.___, 605 P.2d 178, 37 St.Rep. 36. In the instant case the parties have urged us to adopt a different test. The new test is known as the "reasonably effective assistance" test, and may be stated as follows:

> "Persons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases."

We hereby adopt this standard. The reasons for its adoption are many. As was stated in Cooper v. Fitzharris (Ninth Cir. 1978), 586 F.2d 1325:

> "A line of Supreme Court decisions, culminating in McMann v. Richardson, 397 U.S. 759 . . . (1970), undercut the notion that the command of the Sixth Amendment was satisfied merely by appointment of a reputable member of the bar and that counsel's performance after appointment need only meet due process standards. It was established that persons accused of crime are entitled not merely to counsel's presence but to effective assistance of counsel, and that effective assistance means assistance 'within the range of competence demanded of attorneys in criminal cases.'" 586 F.2d 1329.

The new standard, besides providing increased protection of the defendant's constitutional right, also provides the courts with a more objective standard. The old "farce and sham test" required a subjective judgment whereas the new test may be applied by reference to a more objective standard, viz. the range of competence demanded of attorneys in criminal cases.

Finally, we are compelled to adopt this standard because there may be instances where the trial has not been a farce or a sham and yet the defendant has not been represented within the range of competence demanded of attorneys in criminal cases. In such a case the defendant would have been denied effective assistance of counsel, and the "farce and sham" standard would not have protected constitutional rights.

In the present case the defendant has presented five specific failures committed by his trial attorney. In order for us to find that the failures require reversal we must be able to say that they are "errors a reasonable competent attorney acting as a diligent conscientious advocate would not have made, for that is the constitutional standard." Cooper, supra, 586 F.2d at 1330.

The first failure alleged by defendant is counsel's failure to object to hearsay evidence to the effect that the defendant had delivered to Stan Gardiner guns stolen from the Opalka residence. We agree that this was hearsay and should not have been put before the jury. We note, however, that prior to trial, defense counsel made a motion in limine to have this evidence excluded. The judge did not rule on the motion at that time, and subsequently, during trial, the evidence came in without objection. From this it is apparent that counsel had prepared for the case and had made the correct motion. He should have objected to the hearsay evidence during trial, but this in itself does not fall outside of the range of competent counsel.

Defendant next contends that it was error for counsel to fail to object to the inquiry into a defense witness' prior criminal record. Rule 609, Mont.R.Evid., provides that for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is not admissible. Once again, defense counsel should have objected to this testimony, however, in the context of this case, this failure does not appear as if it prejudiced the defendant.

> "When the claim of ineffective assistance of counsel rests upon specific acts and omissions of counsel at trial, as it does in this case, relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct. We have found no holding to the contrary." Cooper v. Fitzharris, supra, 586 F.2d at 1331.

- 13 -

Also, in a case which involved at least a dozen witnesses and several days of testimony, this failure to object, by itself, does not fall outside of the range of competent counsel.

The defendant next contends that defense counsel committed error when he failed to object to the testimony of a rebuttal witness, Craig Howard. Defense counsel did not receive notice of Howard's testimony. Section 46-15-301(1), MCA, provides that the State need not provide the defendant with the names of rebuttal witnesses. In Wardius v. Oregon (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L Ed 2d 82, the United States Supreme Court held that Oregon's statute requiring a defendant wishing to interpose a defense of alibi to furnish notice and a list of witnesses violated due process, because it did not provide reciprocal discovery for the defendant of the State's rebuttal witnesses. The defendant argues that counsel was ineffective in not moving to exclude Howard's testimony in reliance on Wardius.

In State v. Maldonado (1978), ____Mont.____, 578 P.2d 296, 304, 35 St.Rep. 420, 430, this Court said that the decision of counsel to challenge the constitutionality of a statute is a matter of legal judgment. Counsel's failure to raise the Wardius issue may seem like error in retrospect. This error, however, certainly does not fall outside of the range of competent counsel.

Next, the defendant contends that defense counsel erred in not challenging a certain juror.

On the last day of trial this juror informed the Court that he had been mistaken in denying acquaintance with Richard Cory during voir dire. Apparently the juror and Cory's brother had been acquaintances 15 years prior to the trial. The juror stated that this would not influence him. This failure to challenge was not error.

The defendant finally contends that defense counsel erred in not moving to "quash" the information for lack of probable

cause. The affidavit in support of the motion for leave to file relied to a large extent upon the hearsay allegations of Richard Cory. The defendant contends that counsel should have moved to "quash" because Cory's statements were not supported by facts tending to show their reliability under the rules announced in Aguilar v. Texas (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L Ed 2d 723.

The Aguilar case is easily distinguishable from the case at hand. In Aguilar the defective affidavit concerned a search warrant rather than an affidavit in support of a leave to file an information. Also, in Aguilar, the application for the search warrant merely stated that "Affiants have received reliable information from a credible person and do believe that" narcotics were on the defendant's premises. The problem with this application, according to the Supreme Court, was that the informant was unnamed; that there were no underlying circumstances presented from which the informant concluded that the narcotics were where he claimed they were; and that there were no underlying circumstances which would support the unnamed informant's credibility. In the present case the informant is named as being Richard Cory and it is clear that Cory is speaking from his own personal knowledge as to the defendant's involvement in the burglary. We are not, therefore, faced with an application that lacks the underlying circumstances which are required by Aguilar. Aguilar simply does not apply. It was not error for the defense counsel not to move to quash for lack of probable cause.

We have read the record in this case. The defense counsel was obviously prepared and competent. He did not do a perfect job, but that is not the standard.

In State v. Forsness (1972), 159 Mont. 105, 110, 495 P.2d 176, 178-79, this Court said:

"Claimed inadequacy of counsel must not be tested
by a greater sophistication of appellate counsel,
nor by that counsel's unrivaled opportunity to
study the record at leisure and cite different
tactics of perhaps doubtful efficacy. Success is
not the test of efficient counsel, frequently
neither vigor, zeal, nor skill can overcome the
truth."

and in State v. Noller (1963), 142 Mont. 35, 38, 381 P.2d 293, 294:

" . . . Hindsight cannot now be used to say what
perhaps could have been done to achieve a possible
but highly speculative result . . ."

Despite the errors made by defense counsel, the defendant received effective assistance of counsel and this assistance was well within the range of competence demanded of attorneys in criminal cases.

Affirmed.

_____
                                 Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea deeming himself disqualified, did not participate in this case.