No. 80-451

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DENNIS RAY KUBAS,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Kenneth R. Olson, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted on briefs: October 1, 1981

Decided: March 3, 1982

Filed: MAR 3 - 1982

*Thomas J. Kearney*

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant appeals from a Cascade County District Court jury conviction and judgment for felony theft and robbery. The only issue he presents is whether his convictions should be overturned because he was denied effective assistance of counsel by his court-appointed attorney. Defense counsel's theory of defense, acquiesced in by defendant, was to show that defendant was so influenced by drugs and alcohol that he was incapable of acting with the requisite "purposely or knowingly" mental state. Defendant now claims that this defense had no chance of succeeding and defense counsel should have known so. We affirm the convictions.

On February 14, 1980, the defendant, Dennis Ray Kubas, was at a party at the Great Falls home of Debbie McShane. The defendant had been ingesting extremely large quantities of beer, whiskey, and barbiturates, and had been injecting into his bloodstream massive quantities of codeine and Preludin, an amphetamine-like appetite suppressant.

Sometime during the party, either Eileen Chambers or her brother, Bill Chambers, mentioned that large quantities of money and drugs could be found at the home of Gary Friese and Laura Walker. Sometime later, Bill Chambers left the McShane residence and told the people at the party that he could be reached at the Friese-Walker residence. At about 9:00 p.m., the defendant borrowed a 1966 red and white four-door Mercury and left the McShane residence.

At approximately 11:00 p.m., Bill Chambers, while at the Friese-Walker residence received a telephone call from the defendant. Laura Walker had answered the telephone and testified that she believed the call to be from the defendant,

-2-

whom she had met before. A couple of hours later, at approximately 1:00 a.m. on February 15, 1981, the door to the Friese-Walker residence was forced open by a man wielding a rifle and dressed in gloves, a face-mask cut from thermal underwear, tan pants, and an army-type parka with orange lining and a brown stripe in the back. Walker described this man as being between 6'1" and 6'3" tall, weighing over 200 pounds, and having a loud, raspy voice. He ransacked portions of the Friese-Walker residence, demanding money and drugs and threatening to kill Walker, Bill Chambers, and Walker's young child. He then stole Gary Friese's new stereo. Both Walker and Bill Chambers identified the get-away vehicle as a four-door red and white late-1960's model Mercury.

The defendant was arrested the next morning while wearing tan pants and while in possession of the borrowed 1966 red and white Mercury. After a search warrant was obtained, police officers seized from the car a face-mask cut from thermal underwear, an army-type parka with orange lining and a brown stripe down the back, and a cassette cartridge taped by Walker and marked in her handwriting. A voice identification line-up was conducted later that morning at the Great Falls Police Station. Although Walker could not see the three men chosen for the line-up, she picked the defendant's voice as the one belonging to the man that robbed her home.

At trial, Walker again identified the defendant. Officer Ayers of the Great Falls Police Department testified that Walker had described a man similar in appearance to the defendant and had identified his voice in the line-up. Defense counsel did not object to Officer Ayers' testimony

-3-

and did not file motions to suppress either Walker's voice identification or the evidence seized from the car. Defense counsel's trial strategy was to establish that the defendant had consumed sufficiently large quantities of alcohol and drugs to prevent him from having the requisite "purposely or knowingly" mental state. The defendant was convicted of both charges, designated a dangerous offender, and sentenced to prison. In December 1980, the defendant's court-appointed attorney moved to withdraw from the case. The District Court granted that motion and named a new attorney to represent the defendant.

The defendant now claims he was denied effective assistance of counsel because his attorney's choice of a defense theory was unfounded by the evidence. By our holding in State v. Rose (1980), ___ Mont. ___, 608 P.2d 1074, 1077, 37 St.Rep. 642, 649, a person accused of a crime is entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases. We hold that the defendant received effective assistance of counsel.

The defendant alleges that his attorney's choice of a defense theory was unfounded by the evidence presented by the defense's two critical witnesses, and had his attorney been adequately prepared for trial, he would have known this and wouldn't have promoted such a theory.

The defense was to show that the defendant was sufficiently influenced by drugs and alcohol that he was rendered incapable of acting with the requisite "purposely or knowingly" mental state. The defendant claims that this theory was unfounded because the defense's two critical witnesses, Dr. John McGregor and the defendant, failed to provide evidence to support this theory. Dr. McGregor testified that the defendant

-4-

was a drug addict, but could offer no medical opinion as to whether his consumption of drugs and alcohol would have rendered him incapable of acting "purposely or knowingly." The defendant's own testimony also failed to establish that the defendant did not know what he was doing at the time of the crimes. The defendant was able to recall with detail the circumstances leading up to the crime, the precise quantities and types of drugs he had taken, and why he did the acts that he did. In his testimony, he admitted nearly everything that the State had established in its case-in-chief. From his testimony, there is no doubt that the defendant was aware he was robbing the Friese-Walker residence.

The defendant contends that it would have been a better defense strategy to discredit the witnesses who testified about the defendant's identity. He contends that once the identification testimony of Bill and Eileen Chamber's was discredited, it would have been possible, with proper objections, to exclude Officer Ayers' testimony that Laura Walker had identified the defendant, and then to isolate and seriously question Laura Walker's testimony.

The identification evidence in this case is so strong however, that defense counsel had little choice but to base his defense upon a theory other than that now proposed by the defendant. The evidence established that the defendant had been involved in a discussion regarding a possible robbery of the Friese-Walker residence, that he later called Bill Chambers at that residence, and that Laura Walker recognized the disguised intruder as the defendant and identified his voice in a line-up. The evidence further established that the defendant had borrowed a friend's 1966 red and white four-door Mercury, that Bill Chambers saw the

defendant leave the Friese-Walker residence in this vehicle, that the defendant was later apprehended in this vehicle, and that the items seized from this vehicle pursuant to a valid search warrant were very incriminating and not easily challenged.

Any attempt to establish that this defendant was not the person who committed these crimes would appear to have had little, if any, merit. A review of the record indicates that defense counsel was adequately prepared and competent. The defendant received effective assistance of counsel well within the range of competence demanded of attorneys in criminal cases.

The judgment of the District Court is affirmed.

_Daniel J. Shea_
                                        Justice

We Concur:

_Frank L. Haswell_
Chief Justice

_Gene B. Daly_

_Frank B. Morrison_

Justices